# Wytheville.

## MYERS v. MYERS & ALS.

### June 25th, 1891.

WILLS—*Debts*—*General Legacies*—*Demonstrative Legacies.*—Testator directed his Carven's Cove land and personalty sold, and his debts paid, and bequeathed $700 to G, one of his seven children, as his entire portion. He also directed his son J to cultivate his home-place, and with its proceeds support his widow, and at her death to take the home-place at $40 an acre, or sell it at auction, and divide the proceeds between his six children. The Carven's Cove land and personalty brought a sum insufficient to pay the debts and the $700 legacy;

HELD:

The legacy to G was a general legacy, and must abate for payment of debts before the devise of the proceeds of the home-place to the six heirs, which was a demonstrative legacy. And G is entitled to be paid his legacy out of any assets which may remain after paying all the debts, but not out of the proceeds of the sale of said home-place.

Appeal from decree of circuit court of Roanoke county, rendered April 2d, 1890, in a suit wherein George G. Myers was complainant, and John O. Myers, executor of David Myers, deceased, David A. Myers, Lewis W. Myers, Isaac F. Sherry, and Susan, his wife, who was Susan Myers, Martha T. Dent, who was Martha T. Myers, Edmonia B. Dent, James B. Dent, and David S. Dent, grandchildren of David Myers, deceased, Robert T. Hatcher, Ada Hatcher, and Laura Hatcher, infant children of Nannie Hatcher, deceased, who was Nannie Myers, and her administrator, were defendants. The decree being adverse to the complainant, he appealed to this court. Opinion states the case.

*Benjamin Haden*, for appellant.

*G. W. and L. C. Hansbrough*, for appellees.

HINTON, J., delivered the opinion of the court.

This suit was instituted by the appellant, George G. Myers, to enforce the payment of a legacy of $700, left him in the will of his father, the late David Myers.

The assets of the estate being insufficient to discharge the debts and all the legacies, the question to be be decided is, Whether there is any property other than that subjected by the decree of the circuit court which is liable for the payment of said legacy, an inquiry which obviously depends upon the construction to be placed upon the other bequests.

For this purpose it is only necessary for the court to consider the following provisions of the will, which, being holograph, shows that the testator was a plain and illiterate man :

".My last will and testament : I appoint John O. Myers my *Exator* after my *disceas*, sale *mate* all my perso*nel* property sold *an* one hundred *an* Sixty acres of mountain land in Carven's Cove *atjoining* the lands of *Wats an* others, *an* my *depts* paid I then give *an bequate* to my son George G. Myers, three hundred dollars twelve months after my *disccas* twelve months thereafter four hundred dollars which *shel* be his *intire porshone* of my estate, John O. Myers to live *an* remain on my home place so long as my *witte* remains to be my *witte*, to cultivate it *an* keep it in good order *an* pay one-fourth of the proceeds thereof in rent for the support of my *witte*, if there be *serples* after her support, that *serples* be *divited equil* between my six *hairs*, after my *witte* ceases to be my *witte*, then John O. Myers takes the home place at forty dollars per acre, *an* if he thinks in his judgment he can he can do better *then* hold the farm at forty dollars per acre he can put it up to the highest bidder *an devide* the *proceds* thereof *equilly* between my six *hairs*," etc.

The testator had seven children, including the appellant. His personal property at the time of his death consisted of four cattle, a few farming utensils, and household and kitchen furniture, valued at $162.50. He had not farmed during the latter years of his life, and kept no horses or stock. And as John O. Myers had to remain and cultivate the home-place during his mother's widowhood, which terminated with her life in 1888, and she remained there also with the right to her support out of the products, *these articles* were retained for her use, and at her death, such of them as had not been worn out in the use, were sold, and accounted for by him.

The Carven Cove tract, of 160 acres of mountain land, was appraised at $80, and afterwards sold for $72; but this sale was set aside by the decree complained of.

The home-place was not taken by the executor, John O. Myers, at $40 per acre, as he was authorized by the will to do, but was sold at auction, and bought by a third party for $25 per acre, who subsequently sold it to the said John O. Myers at the same price.

The circuit court, by the decree complained of, adjudged that the appellant " is entitled, under the said will," meaning the will of David Myers, " to be paid out of the assets of the testator's estate the legacy of $700, given him by the testator, out of any assets of said estate which may remain after the payment of all the debts of the estate, including the expenses of his burial and the administration of the estate, and the payment of the specific or demonstrative legacy out of the proceeds of the sale of the testator's farm, called in the will his ' Home Place,' to his six children and heirs-at-law, other than the complainant; but that the complainant is not entitled to receive any portion of his said legacy out of the proceeds of the sale of said ' Home Place,' and has no pecuniary interest therein whatever." This decree seems to us to be plainly right.

The legacy to George G. Myers is clearly a general or pecuniary legacy, which, of course, cannot be paid until the debts

have been discharged, and which, according to all the authorities, must abate for the payment of debts before specific or demonstrative legacies. On this head, says Mr. Minor: " General legacies [sometimes inaptly styled *pecuniary legacies*, are legacies of money, or of chattels which may be satisfied by the delivery of *anything of that kind.* Thus a legacy of ' my usual riding horse,' is *specific*, whilst one of ' *a* riding horse,' is general. A legacy of $1,000, is general, whilst one *out of the money owing me* by Z, is *demonstrative.*"

And " general legacies," he goes on to say, " *abate* ratably amongst themselves for the payments of debts—first of all, before either specific or demonstrative legacies, but they are not liable to be *adeemed* as specific legacies are." 3 Minor's Inst. 201 (Lith Ed); 2 Lomax Executors, p. 75; *Skipwith* v. *Cabell*, 19 Gratt. 789; *Mills* v. *Robinson*, 19 Gratt. 468, 472; 3 Lomax Dig. top p. 392; 3 Jarman on Wills, p. 449.

Now in this case, as the proceeds of personalty are less than $200, whilst the record shows the debts to amount to more than $3,200, it is manifest that the legacy to George G. Myers must abate unless the Carven Cove tract, which is ordered by the decree aforesaid to be re-sold, shall bring an excess over the sum of $72, for which it first sold, and which has been accounted for, sufficient to discharge the balance of debts and the said legacy, or unless it can be charged upon the " Home Place," which is all that is left of the testator's estate.

But the direction in the will of David Myers, that John O. Myers, his executor, should take the " Home Place " at $40 an acre, or put it up to the highest bidder, and *divide the proceeds thereof equally between his six children,* is a demonstrative legacy.

A demonstrative legacy, says this court in a noted case, is a legacy of quantity, with a particular fund pointed out for its satisfaction, and it is so far general, and differs so much from one properly specific, that if the fund be called in or fail, the legatee will not be deprived of his legacy, but be permitted to

receive it out of the general assets, yet is so far specific that it is not liable to abate with general legacies upon a deficiency of assets. 2 Lomax on Ex'ors, 70 ; 2 Wms. on Ex'ors, 1252; 2 Redf. on Wills, 137; *Corbin* v. *Mills*, 19 Gratt. 470 ; 3 Pomeroy's Eq. Juris. § 1133; *Morriss, &c.* v. *Garland's Adm'r*, 78 Va. 223; 3 Min. Int. p. 200. And these "legacies, so far as the fund to which they are referred will suffice for payment, are preferred to general legacies, because it is to be inferred that by referring to specific parts of the estate for their payment, the testator intended them to be preferred to other legacies which he had not so secured." 13 Am. and Eng. Encyc. Law, p. 146, n ; Wms. Ex'ors (7th Eng. Ed.) 1371.

Such being the relative characters of these two different legacies, and the rule being that a demonstrative legacy is preferred to a general legacy, in the case at bar, inasmuch as the assests of the testator are insufficient to pay his debts and his legacies too, the general legacy of $700 to the appellant has to abate to pay the debts before the demonstrative legacy to the remaining six children can be touched.

This is the view taken by the circuit court in its decree, and, as for the reasons just stated we concur in that view, the decree appealed from is right, and must be affirmed.

DECREE AFFIRMED.