# Richmond

## MAY, GUARDIAN, V. SHERRARD'S LEGATEES.

### November 20, 1913.

1. WILLS—*Legacies—Specific—Demonstrative.*—A specific legacy is a bequest of a specific article of the testator's estate, distinguished from all others of the same kind; for example, a particular horse, or piece of plate, or money in a certain purse, or chart, a particular stock in public funds, a particular bond or other instrument for the payment of money; whereas a demonstrative legacy is a bequest of a sum of money or of quantity or amount having a pecuniary value and measure, not in itself specific, but made *primarily* out of a designated particular fund or piece of property belonging, or assumed to belong, to the testator.

2. WILLS—*Specific Legacies—Ademption.*—As a general rule a legacy will not be construed as specific unless it appears clearly to have been so intended, and whether or not it is specific depends wholly upon the language of the will. Liability to ademption is said to be the most distinctive feature of a specific legacy.

3. WILLS—*Specific Devises and Bequests—Revocation—Case in Judgment.*—A devise of "my dwelling house and the lot on which it stands" . . "to be sold and equally divided between" · two designated beneficiaries, is either a gift of the house and lot or it is a gift of the fund arising from the sale thereof. If it be a gift of the house and lot, it is manifestly a specific devise; if it is a gift of the fund arising from the sale directed, it is equally specific, and the subsequent alienation of the property by the testatrix worked a revocation if it was a devise, and an ademption if it was a bequest.

4. JUDGMENTS—*Stare Decisis—Old Cases—Weight Given.*—The fact that a case is old does not affect its value or authority, and where it appears to have been carefully considered and well supported by authority, and is in accord with modern decisions in other States, it should not be regarded as overruled by a subsequent case in conflict therewith which makes no reference to it, and in which the question decided does not appear to have been carefully considered.

5. WILLS—*Specific Legacy—Ademption—Intention of Testator.*—The fact that a testator states in the codicil to his will what he

had done with land specifically devised by his will, and what
disposition he had made of a portion of the proceeds thereof, does
not affect the question of ademption.  Ademption generally de-
pends upon a rule of law and not upon the intention of the
testator.

6.  WILLS—*Construction—Intention of Testator—Change of Words.*—
Where the testator's intention is manifest from the whole will
and surrounding circumstances, but is endangered and obscured
by inapt and inaccurate modes of expression, the language used
will be subordinated to that intention, and, in order to give
effect to such intention, one word may be substituted for an-
other, but the right of the court to mould the language of a
will by rejecting, supplying, transposing or substituting words
exists only where the testator's intention is clear or manifest
from the context and the surrounding circumstances.

7.  WILLS—*Construction—Substitution of Words—Case in Judgment.*—
A testatrix, by a codicil in her own handwriting, gave a $600
certificate of stock in a manufacturing company to certain
designated legatees, and in the same clause uses the following
language: "I have also $1,400 certificate at Clover S. C. Manfc.
Co., M. L. Smith, Treas., put there the 11th of April, 1910, and
no interest as yet drawn at 7 *per cent.*  See that it is drawn
by check.  That I wish to go to."  Both certificates were claimed
by the same legatees, who insisted that the final word "to" in
the sentence quoted should be construed and treated as intended
for the adverb "too," but it is held that this could not be
done, and that the $1,400 certificate passed under the residuary
clause of the will.

Appeal from a decree of the Corporation Court of the
city of Staunton, in a suit brought by an executor for the
construction of the will of his testatrix.

                                                    *Affirmed.*

The opinion states the case.

*Quarles & Pilson,* for the appellants.

*Timberlake & Nelson, Robertson & Robertson* and *W. H.
Landes,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The principal object of this suit, which was brought by the executor of the last will and testament of Mrs. Maria L. Sherrard, was to have a construction of that instrument. The will is one of considerable length, containing twenty clauses and a codicil. The controversy here, however, is only as to the construction to be placed upon the second clause and a portion of the codicil. The provision of the second clause is as follows:

"Second. I give, bequeath and devise my dwelling house and the lot on which the same stands, situated on North New street, in the city of Staunton, Virginia, and now known by the street number of 307 North New street, to be sold and equally divided between Tate Boys Sterrett, of Hot Springs, Virginia, and John Bishop, of Charlestown, West Virginia, great-nephews of mine, and sons of Maria B. Sterrett, of Hot Springs, Virginia, and Margaret Bishop, of Charlestown, West Virginia.

The only other portions of the will which, it is claimed, throw any light upon the meaning to be given the clause quoted is contained in the fifth clause, which, after making certain bequests to Margaret Bishop, a great-niece of the testatrix, provides that "in the event of the death of her brother, John Bishop, I will one-half of the 307 North New street house, when sold, to pass in fee simple absolute to Margaret Bishop, of Charlestown, West Virginia"; and the codicil, which states, among other things, that the testatrix had sold the house No. 307 North New street for thirty-five hundred dollars and invested twenty-six hundred and fifty dollars thereof in two houses and lots in the city of Roanoke, which were worth three thousand dollars at the time the codicil was written. The trial court held that the devise or bequest made in the second clause was specific and not demonstrative, and that by the sale of house No. 307 mentioned therein in the lifetime of the testatrix the gift made by that clause was adeemed or

revoked, and that the devisees or legatees named therein took nothing under it.

The distinction made between specific and demonstrative gifts is well understood, but it is sometimes difficult to determine whether a particular gift belongs to the one class or the other. Definitions of these two kinds of legacies are found in the decisions and text-books, varying somewhat in phraseology, but generally substantially the same in meaning.

Mr. Pomeroy, in his work on Equity Jurisprudence, which is relied on largely by the appellants to sustain their contention that the legacy in question is not specific, but demonstrative, defines a specific legacy as "a bequest of a specific article of the testator's estate, distinguished from all others of the same kind—as, for example, a particular horse, or piece of plate, or money in a certain purse, or chart, a particular stock in the public funds, a particular bond or other instrument for the payment of money." (Vol. 3 [3rd ed.] section 1130.) He defines demonstrative legacies as "bequests of sums of money, or of quantity or amounts having a pecuniary value and measure, not in themselves specific, but made payable *primarily* out of a particular designated fund or piece of property belonging or assumed to belong to the testator." (Same volume, section 1133.)

The general rule is that a legacy will not be construed as specific unless it appears clearly to have been so intended (*Corbin* v. *Mills,* 19 Gratt. [60 Va.] 438, 468), and that whether or not it is specific depends wholly upon the language of the will. 3 Pom. Eq. Jur., sec. 1130.

Tested by these definitions and rules of construction, to which class does the gift in question belong? The language of the second clause is: "I give, bequeath and devise my dwelling house and the lot on which the same stands" (describing it so that there could be no doubt about its location and identity), "to be sold and equally divided be-

tween" the beneficiaries named. Whether this be a gift of the house and lot itself, and the sale directed was merely for the purposes of partition between the devisees, as the appellee insists, or a gift of the proceeds or fund arising from the sale of the house and lot, there can be no question that the thing given is so described, pointed out and identified as to distinguish it from all the other property of the testatrix. It is not a gift of a certain sum of money or other thing "payable primarily out of a particular designated fund or piece of property." There is nothing in the language of the clause or of the will which manifests any intent to give the persons named in that clause any particular sum, or amount, or quantity, to be paid primarily out of the proceeds of the sale of the house and lot, and if for any reason that fund should fail, then to be paid out of the general estate; but, on the contrary, the gift is either of the house and lot or it is a gift of the fund arising from the sale. If it be a gift of the house and lot, it is manifestly a specific devise; if it is a gift of the fund arising from the sale directed, it is equally specific as it seems to us. That the testatrix intended the gift made by that clause as specific, either of the house and lot or of the fund produced by its sale, is emphasized and made clearer, if possible, by the fifth clause of her will, which provides "that in the event of the death of her brother, John Bishop" (one of the beneficiaries under the second clause), "I will one-half of 307 North New street house, when sold, to pass in fee simple to Margaret Bishop. . . ."

The conclusion that we have reached, that the gift in question is specific and not demonstrative, is fully sustained by the case of *King* v. *Sheffey,* 8 Leigh (35 Va.) 614, in which the provision of the will construed was substantially the same as that now under consideration. In that case the testator, after having given to his wife one-

third of the rents and profits of his Fincastle property for
life, devised and bequeathed to the children of his son and
daughter, Conally and Nancy Finley, "one-half of my per-
sonal property in the county of Washington aforesaid;
also, two-fifths part of the net proceeds of my estate in
Fincastle aforesaid, which is to be sold at my beloved
wife's death, at the discretion of my executors." He then
gives two other fifths of the Fincastle property to Mitchell
and wife and the remaining one-fifth to Allen and wife.
The testator's estate in Fincastle consisted of several
houses and lots, which he sold within less than a year
before his death upon one, two, three and four years'
credit, and he was the owner of the purchase money bonds
at the time of his death. The question in that case was
whether or not the devise or bequest of the Fincastle estate
or its proceeds was revoked or adeemed by the alienation
of the testator in his lifetime. President Tucker, in de-
livering the opinion of the court, said, among other
things: "It seems to have been assumed by the counsel
for the appellee that these devises of the proceeds of the
Fincastle estate were to be considered as legacies, but it
was very properly admitted that as legacies they came
within the description of specific legacies. And if they
are legacies at all in the strict sense of the term, they are
strictly specific and are not of that class of legacies of
money or quantity which are said to be only in the nature
of specific legacies, and which, if the fund be called in
or fail, will be paid out of the general estate. 1 Roper on
Legacies, 169. For here it is clear that the testator had
no design that his general estate should ever be charged
with those legacies. . . . Moreover, it was not a bequest
of a certain sum (as of five hundred dollars) chargeable
upon the land, which, according to the case of *Fowler* v.
*Willoughby*, 2 Sim. & Stuart 354, might be charged on the
general assets if the land failed, but it was a devise of

an uncertain interest, which would be more or less, according to the prices for which the land might sell, the amount of which did not admit of being ascertained except by sale."

After holding that if the gifts in that case were treated as legacies they were specific and were adeemed by the alienation of the Fincastle estate by the testator, he continues: "To come to a just understanding of this case, however, we must consider it more closely. This is a case of a devise, and a devise of real estate." After giving the reasons why the claim in question was a will of real estate and citing authorities to sustain that view, he says: "So completely, indeed, is it a devise of the land to the three beneficiaries that if it had not been sold Finley, Mitchell and Allen might now by their concurrent act demand a conveyance of the land itself and arrest the sale; for a right to the whole proceeds of the estate is a right to the estate itself." After citing authorities to sustain that view, he says: "The devise, then, being of real estate—that is, of an equitable interest in land—was revoked by alienation. This principle is too plain to require support."

An attempt is made to distinguish that case from this in this—that in the one the property to be sold is specifically designated, and in the other it is not. The fact that the testator in *King* v. *Sheffey, supra,* did not name or designate each house and lot which he directed to be sold, but described them as his "Fincastle estate," whereas in this case the property is specifically designated and described, does not affect the question under consideration, for the property was as fully identified in the one case as in the other. It is also insisted that *King* v. *Sheffey* is contrary to the weight of authority in other jurisdictions, is a very old case and has never been cited or relied on by this court, and is in conflict with *Myers* v. *Myers,* 88 Va. 131, 13 S. E. 346.

If the gift in this case be treated as a devise of real estate, the whole current of authority is that it was revoked by the alienation of the house and lot by the testatrix. If it be regarded as a bequest or legacy, then the weight of authority is, it seems, in favor of the conclusion reached by this court in *King* v. *Sheffey*. The textbooks generally, as we understand them, so state the rule, and the decided cases sustain that statement.

In discussing the subject of specific legacies, Mr. Roper in his work (4 Am. ed., p. 200) says that "if a testator direct his freehold or his leasehold estates to be sold and dispose of the proceeds in such a form as to evince an intention to bequeath them specifically, the testamentary disposition will be specific, the money is sufficiently identified and severed from his other property, and since he has sufficiently marked his intent to distribute the identical proceeds, the bequests are accompanied with all the requisites of specific legacies." Citing *Page* v. *Leafingwell*, 18 Vesey 463.

In a note to 3 Pom. Eq. Jur., sec. 1130, at p. 2210, it is said that "where the testator deals with specific property belonging to himself, not by giving legacies or sums of money out of it, but by dividing and apportioning out the very property itself, or the proceeds of it, if it is directed to be sold and converted into money, then the bequests of the parts thus apportioned among the legatees will be specific." Citing *Page* v. *Leafingwell* and other English cases.

In Redfield on Wills it is said: "A distinction is made between legacies out of the issues of real estate, whether resulting from sale or otherwise, and legacies merely chargeable upon real estate. In the former case it has been regarded the same in effect as a devise of a specific proportion of real estate, and consequently as creating a

specific devise, the same as if a portion of the real estate itself had been devised." 2 Redfield on Wills, p. 145.

In 18 Am. and Eng. Enc. Law. (2nd ed), p. 716, it is said: "A gift of a specific thing to be sold and divided in certain shares among several persons is a specific bequest." Also note 4, page 720. See also note to the case of *Weed* v. *Hoge, &c.,* 28 Am. and Eng. Cases Ann. 543, 546, &c., where numerous cases are cited. In the case to which that note is appended it was held that a will directing the executors to sell the testatrix's property situated in the State, and to give a specified part of the proceeds to her husband absolutely, creates a specific legacy. It lays down the rule as general, that "a gift of the proceeds of the sale of specific real estate or chattels is specific."

It is true, as contended, that *King* v. *Sheffey, supra,* is an old case, and that it has never been cited by this court, so far as we know. The fact that it is old does not affect its value or authority; that it has not been cited may be because our reports do not contain many cases involving the question of the distinction between specific and demonstrative legacies, and none which involve the precise question involved in that case and in this, unless it be the case of *Myers* v. *Myers,* 88 Va. 131. That case makes no reference to *King* v. *Sheffey,* though the opinion seems to be in conflict with the decision in that case. The opinion in *Myers* v. *Myers* shows on its face that the question, whether or not the gift in that case was specific or demonstrative, was not very fully considered, and it can hardly be supposed that it was intended in that case to overrule *King* v. *Sheffey* without even referring to it, its reasoning or the authorities upon which it was rested—a case in which the opinion was rendered by President Tucker, one of the most distinguished jurists that ever sat on this bench, and concurred in by all the other members of the court—Cabell, Carr, Brokenbrough and Brooke.

The conclusion in *King* v. *Sheffey,* that the gift in that case was specific whether treated as a devise of real estate or a bequest of the proceeds of its sale, seems to us to draw the true distinction between specific and demonstrative gifts by will, and is in accord with the weight of authority, and should not be regarded as having been overruled by a subsequent case which makes no reference to it, and in which the question does not appear to have been carefully considered. There is nothing in our other cases referred to, as we understand them, which is not in harmony with the principles announced in *King* v. *Sheffey.*

Having reached the conclusion that the gift in question was specific, it follows that the appellants can take nothing under the second clause of the will, whether the gift be treated as a devise or a bequest, for the alienation of the property by the testatrix worked a revocation if it was a devise and an ademption if it was a bequest. Liability to ademption is said to be the most distinctive feature of a specific legacy.

In *Hood* v. *Haden,* 82 Va. 588, 599, it was held that if the identical thing bequeathed was not in existence, or had been disposed of by the testator, so that it does not form a part of the testator's estate at the time of his death, the legacy is extinguished and the legatee's rights are gone.

In *Skipwith* v. *Cabell,* 19 Gratt. (60 Va.) 758, in which one of the questions was whether or not certain stock given had been adeemed, it was held that a mere nominal or formal change in the thing given did not work an ademption. In that case the gift was of "my guaranteed bonds of the James River and Kanawha Company, to be equally divided between" the beneficiaries. After the date of the will an act was passed which authorized the holders of the bonds of that company, for which the State was bound, to surrender them and receive in lieu thereof bonds of the State for the same amount, and under this act the tes-

tatrix exchanged her guaranteed bonds for State bonds, which she held at her death. While it was held in that case that there was no ademption, it was upon the ground that the thing given had been changed in name and form only and was substantially the same; but Judge Joynes recognizes fully the general rule that where the thing given is not in existence or has been alienated the bequest is adeemed. He says: "Where stock specifically bequeathed has been sold by the testator . . . the subject of the bequest is extinguished or annihilated—nothing exists upon which the will can operate and the legacy is adeemed and gone, but where the thing specifically given has been changed in name and form only and is in existence substantially the same, though in a different shape, it will not be adeemed by such nominal change." Page 795.

There are cases in other jurisdictions which hold that the sale or disposition by the testator in his lifetime of the thing given does not always work an ademption, but they are contrary to the general rule (see 3 Pom. Eq. Jur., sec. 1131, and notes 2 and 3; *Slater* v. *Slater*, 8 Am. and Eng. Ann. Cases 141, and note, p. 144, &c., and cases mentioned), and to the doctrine of our own decisions. In *King* v. *Sheffey, supra,* the purchase money bonds of the property directed to be sold and the proceeds divided between the beneficiaries belonged to the estate, and yet, treating them as legacies, it was held that they were adeemed. This case is a stronger one for the ademption of the bequest than that, since in this case not only was the house and lot, given and directed to be sold and its proceeds divided, sold during the lifetime of the testatrix, but the proceeds in part were invested in other real estate and the residue of the proceeds otherwise used or disposed of.

The fact that the testatrix states in the codicil to her will what she had done with the Staunton property and

the disposition she had made of a portion of the proceeds does not affect the question of ademption. Ademption with us, and generally, depends upon a rule of law and not upon the intention of the testator. *King* v. *Sheffey, supra,* 617; *Skipwith* v. *Cabell, supra,* 794-5; 1 Roper on Legacies, 329.

The remaining question to be considered is whether or not the fourteen hundred dollar certificate of stock mentioned in the codicil was bequeathed to the appellants, Tate Boys Sterrett and John Bishop.

So much of the codicil as bears upon this question is in the following language: "Since, then, I have a $600 certificate, Clover Manufacturing Company, Clover, S. C., invested May 10, 1910, at 7 *per cent.* Mr. M. L. Smith, treasurer, invested it. I wish that to be collected and equally divided with Tate Boys Sterrett, of Hot Springs, Va., Bath county, son of Tate Sterrett and Maria Boys Sterrett, niece of mine. The other one-half of property I mention to go to John Bishop, of Hagerstown, Md., son of Mrs. Margaret Smith now and mother of John Bishop, my niece's son, of Hagerstown, Md. This is change must be. I have also $14 hundred certificate at Clover, S. C., Manfacturing Company, M. L. Smith, treasurer, put there the 11th of April, 1910, and no interest as yet drawn at 7 *per cent.* See that it is drawn by check. That I wish to go to."

It is conceded by the appellants that if "to," the last word in the codicil, is to be treated as correctly spelled, the clause or sentence as to the $1400 certificate is meaningless; but it is insisted that if the word "to" be treated as intended for the adverb "too," then the meaning is plain. The last property bequeathed in the codicil immediately before the clause in question was precisely the same kind of a chose in action as that disposed of, or attempted to be disposed of, by the last clause. The persons to whom

the $600 certificate, or its proceeds, is given are the same persons who claim that they are the beneficiaries intended under the last clause.   If it had been the intention of the testator to give both certificates to the same parties and in the same proportions, why was it not done in one clause? The fact that she did not so dispose of them would tend to show that she did not intend to give the $600 certificate and the $1400 certificate to the same persons.   The codicil is wholly in the handwriting of the testatrix, and she was the owner of both certificates when it was written.   Instead of the codicil, taken as a whole, showing a manifest intention on the part of the testatrix to give the $1400 certificate as well as the $600 certificate to the same persons, it shows, as it seems to us, an intent not to do so.   It is well settled that where the testator's intention is manifest from the whole will and surrounding circumstances, but is endangered and obscured by inapt and inaccurate modes of expression, the language used will be subordinated to that intention, and in order to give effect to such intention one word may be substituted for another, as is asked to be done in this case.   *Brewer* v. *Fue,* 1 Call (5 Va.) 212; *East* v. *Garrett,* 84 Va. 523; 2 Minor's Inst. (1st 'ed.) 1114-1116; 40 Cyc. 1399, 1401.   But the right of the court in construing a will to mould its language by rejecting, supplying, transposing or substituting words only exists where the testator's intention is clear or manifest from the context and the surrounding circumstances.   40 Cyc. 1399-1400; 2ᴸ Min. Inst., 1112-1114, 1115, and authorities cited. But in this case no such manifest or clear intent, or any intent at all, appears to give the $1400 certificate to the appellants as would authorize the court to substitute "too" for "to" or give "to" the meaning of "too."   Indeed, if such a change was made, it would not then clearly appear that the testator intended to give the $1400 certificate to the appellants.

We are of opinion that the corporation court did not err in holding that the clause in question is so vague and indefinite that it cannot be determined with any degree of certainty what the testatrix did mean, and that the $1400 certificate passes under the residuary clause.

Upon the whole case, we are of opinion that there is no error in the decree complained of, and that it must be affirmed.

*Affirmed.*