## CIRCUIT COURT OF CLARKE COUNTY

H. K. Benham, Administrator c.t.a.d.b.n.
of Maria Garnett McGuire

v.

Grace Episcopal Church, Berryville,
Gilbert McKown, Trustee, et al.

September 15, 1960

By JUDGE ELLIOTT MARSHALL

In this case the question presented is the proper construction of a portion of the language of the last dated testamentary paper of Maria Garnett Lewis. This paper, dated January 15, 1952, is entitled "A Codicil", and contains the following clause which is the subject of controversy:

> The directions and provisions of this Codicil do hereby revoke and cancel any and all <u>directions</u> <u>and</u> <u>provisions</u> for <u>specific</u> <u>monetary</u> <u>bequests</u> contained in any previous wills or codicils by me at any time heretofore made. (Italics supplied)

The administrator, c.t.a.d.b.n., has brought this suit praying for a judicial construction of this clause but suggesting to the Court what the construction should be.

Emily C. McCormick and others, defendants, who are descendants of William T. Lewis have in their answer taken the position that they are entitled to the proceeds of sale of the real estate devised under

the codicil in question after the payment of the six legacies provided, contending that the testatrix by said codicil did not revoke the provisions of her codicil dated October 29, 1945, which provided that they should receive such proceeds subject to the payment of $2,000.00 to the Boys Home in Covington.

The infant defendant, Charles Fenton Mercer Garnett McGuire, III, by his guardian ad litem contends that the clause in question revoked the aforesaid provisions of the codicil of October 29, 1945, and consequently, he is entitled to said residue by virtue of the residuary clause of the will of January 4, 1936, and the codicil of June 17, 1946.

I think it necessary briefly to review the various testamentary papers in the light of the facts and circumstances of record.

William T. Lewis and Maria Garnett Lewis had no children. Each had separate property, both real and personal, of his own. Each was of a prominent family and possessed valuable furniture and other tangible personal property which had come down through the family. The home and lot on Church Street in Berry- ville, which is the subject of controversy was owned by William T. Lewis but acquired by Maria Garnett Lewis at his death. Mr. Lewis was an attorney and his wife was an educated woman, apparently somewhat fami- liar with legal terminology.

Between the years of 1936 and 1957 Mrs. Lewis wrote no less than fifteen holographic testamentary papers, all of which have been duly admitted to pro- bate.

In the first will of 1936 it is apparent that the general design of the testatrix that. her property should go to the side of the family from whence it came, that is, that the property acquired by her from her husband should go to his relatives and what she considered her own property should go to hers. She incorporated by reference several pre-dated lists of tangible property which was to go to his named rela-

tives and her own and it is obvious that most of the property listed would be of some sentimental value to the recipients because of family ties. The Church Street property which came from her husband was by the second clause devised to "the heirs at law and next of kin of my deceased husband. . . ." The residue of her estate, real and personal was given to her nephew, Charles McGuire, father of the infant defendant. She named as co-executors a member of each side of the family.

Eight years later, in 1944, she made some changes in the bequests of personal property and corrected an error but did not change the general testamentary design, and a year later, in 1945, appointed a resident executor because her former executors had removed from the state.

In 1945 she made a codicil giving $2000.00 to the Boys Home of Covington payable from the sale price of the Church Street property and directing that the balance be divided among five named nephews on her husband's side of the family.

In 1949 she wrote two codicils concerning money that she owed J. G. B. Campbell, a member of her family, providing that he should be repaid from the proceeds of the sale of the Church Street property if her personal estate were insufficient.

There appears to be no change in the general testamentary designs except that the value of the shares of her husband's nephews would be diminished to the extent of the legacy to the Boys' Home and the repayment of the Campbell loan.

It was not until sixteen years subsequent to the will that the codicil of 1952 was made dealing only with the Church Street property in which she gives from its proceeds of sale $1000.00 to the Boys Home, $1000.00 to the Episcopal Church and $7000.00 to four of her relatives, without reference to the disposition of the residue.

In 1955 and 1957 she made four codicils disposing of certain articles of furniture and china to her kin which are not indicative of the general design.

I think it only logical to assume from these facts related that in 1952 the testatrix's general design to leave her property to the descendants of the family from whence it came had changed, at least to a considerable extent. The least that could be said is that after giving the Church Street property to her husband's kin in her will she cut down the value by $2000.00 and the number of recipients nine years later and then seven years later gave an additional $7000.00 thereof to her kin.

The question then is, did she intend to disinherit her husband's kin entirely as to the Church Street property and give the residue after the $9000.00 bequests to her residuary legatee in her will? Did she mean to revoke the provisions as to the residue set forth in her codicil of October 25, 1945?

It may be well first to determine the legal definition of the nature of the gifts in that codicil.

Mr. Lewis's nephew beneficiaries named in the codicil contend first that the gifts are not bequests but a devise of an interest in real property; and, second, that if they are bequests or legacies they are general, not special; therefore the testatrix could not have intended to include them under her language "specific monetary bequests" in the revocation clause of the codicil of January 15, 1952.

The answer is that under the provisions of the will and codicil of 1945 the beneficiaries were given money, not land. The will directs $2000.00 "of the sale price" is to be given to the Boys Home "the rest of the amount to be divided. . ." The testatrix is by implication creating in her executors the power to sell and divide the proceeds in money. While equitable title was created in the beneficiaries, legal title was in the executors. Upon the death of the testatrix the land for the purposes of equity represented per-

sonal property, an equitable conversion occurring immediately upon the death. Therefore, the gifts were bequests or legacies and not devises, Marcy v. Graham, 142 Va. 285. The bequests are special, not general or demonstrative. As was held in May v. Sherrard, 115 Va. 617, it is clear from the will that the testator never intended that these bequests should be paid from any source other than the Church Street property. The very fact of the general design would so indicate, even if the language of the will were not clear in this respect.

If the testatrix had not used the term "monetary" there could be no doubt that her revocatory language included the bequests as to the residue of the sale price of the Church Street property if we apply its legal connotation.

Does, then, her use of the word "monetary" legally indicate her intention to revoke only the bequests of specified sums?

It must be noted that none of the testamentary papers included any general bequests. The codicil provisions for the repayment of the Campbell loan might be termed a demonstrative legacy and a charge upon the Church Street property, respectively. The only bequests made by the testator in any of her papers were the specific bequests of tangibles and the specific bequests of the moneys to be realized from the sale of the Church Street property. The use of the word "monetary" would exclude all of the multitude of bequests of tangibles and there could be no doubt of her intention in this respect, but did she intend to make this the only differentiation, or did she intend to refer only to the bequests made in stated amounts? If she meant to include only the latter the effect would be to revoke only one specific bequest; namely, the bequest of $2000.00 to the Boys' Home of Covington in her codicil of October 29, 1945. The use of the plural and the fact that ordinarily one would refer specifically to the subject if there were only one are facts of significance in determining her intention.

Webster gives the definition of the word monetary: "of money; pecuniary." Pecuniary means: "relating to money."

A pecuniary legacy or bequest is one that is payable in money, whether in a stated or ascertainable amount. A "specific monetary bequest" is one which is payable in money whether in a stated or ascertainable amount.

Under all definitions, whether legal or lay, the testator's language indicates the intention to revoke all bequests other than those of tangibles, which are excluded by the use of the word "monetary". This construction does violence to her original general design, but this design obviously changed its character to a large extent over the years, and even were this not the case the language which she used could be subject to no other construction than that of the ordinary meaning of its terms.

I will decree that the codicil of January 5, 1952, revoked all specific pecuniary legacies of the codicil of October 29, 1945, and that the residue of the money from the sale of the Church Street property passes under the provisions of the fourth clause of the will and the codicil of June 17, 1946.