COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Chaney
Argued at Lexington, Virginia

CURTIS GLEN ATKINS

MEMORANDUM OPINION[*] BY
v.      Record No. 0751-22-3      JUDGE MARY GRACE O'BRIEN
AUGUST 1, 2023

SHERYL ATKINS WILLIAMS, ET AL.

FROM THE CIRCUIT COURT OF GILES COUNTY
Robert M.D. Turk, Judge

Timothy E. Kirtner (Gilmer, Sadler, Ingram, Sutherland & Hutton,
on briefs), for appellant.

H. Gregory Campbell, Jr. (Campbell & Ackerman, on brief), for
appellees.

Curtis Glen Atkins (appellant) appeals an order granting summary judgment to Sheryl

Atkins Williams (Sheryl) and Joseph Anthony Atkins (Joseph), his siblings and the co-executors of

their mother's estate. The court ruled that a devise of farmland made to appellant in his mother's

will had adeemed by extinction. Appellant contends the court erred by failing to apply Code

§ 64.2-413, ruling that the devise passed to Joseph under the will's residuary clause, and by

considering unsworn and unproven allegations contained in unrelated civil complaints. For the

following reasons, we affirm the court's ruling.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Betty Atkins (Betty) died testate in February 2020, survived by three of her four adult children: appellant, Sheryl, and Joseph. Her fourth child, Timothy, predeceased her by two months.

In 1982, Betty executed a will devising among other things a tract of farmland that, at the time, was jointly owned by her husband and brother-in-law.[2] Specifically, Article Third, subsection (a) of Betty's will devised

> [t]o my sons, Timothy Lee Atkins and Curtis Glen Atkins, as joint tenants with the right of survivorship as existed at common law, so that upon the death of one of the parties, the entire fee simple interest in said real estate shall immediately become vested in the survivor, any and all interest which I may receive from my said husband in the farm at Maybrook, Giles County, Virginia, which farm is currently jointly owned by my husband and my brother-in-law . . . .

Betty's will also contained a residuary clause, conveying "the rest, residue[,] and remainder of [her] estate" to Joseph.

The farm was 290.874 acres at the time Betty executed her will. When Betty's husband died in 2003, she inherited his interest in the farm. Betty and her brother-in-law amicably partitioned the farm in October 2005, and Betty acquired sole, fee simple title to a 142.618-acre tract. In November 2005, Betty conveyed one acre to Timothy. Approximately one month later, Betty executed a codicil to her will substituting her children, Sheryl and Joseph, as her executors, in place of her deceased husband. The other provisions of her will remained unchanged.

In September 2005, Betty allegedly contracted to sell appellant her interest in the farm for $25,000. The record does not reflect that appellant ever sought to enforce the purported contract,

_____

[1] Pursuant to Rule 5A:8(c), the parties presented an agreed statement of facts in lieu of a transcript.

[2] Betty's husband executed a reciprocal will in 1982.

- 2 -

and, although Betty subsequently filed a complaint in 2007 seeking to nullify it, she did not pursue that lawsuit. The court eventually dismissed the case sua sponte.

In February 2012, Betty conveyed her remaining 141.618 acres of the farm to appellant by a deed of gift. As a result, she no longer possessed any interest in the farm. Soon after, however, Betty filed another complaint against appellant seeking to void the 2012 deed of gift. Betty and appellant settled the lawsuit. Although the terms of the settlement are not in the record, appellant subsequently conveyed 83.587 acres of the tract to Timothy in 2015. At this point, Timothy owned 84.587 acres (the 83.587 acres he received from appellant, and the 1 acre he received from his mother) and appellant owned 58.031 acres as "separate tracts." Betty did not reacquire any interest in the farm as a result of the settled deed-of-gift lawsuit.

Timothy died intestate in December 2019, and Betty, his sole heir at law, inherited his 84.587-acre interest in the farm. Betty died two months later, and her will was admitted to probate.

Appellant filed a complaint against Sheryl and Joseph, individually and as co-executors, seeking a judicial declaration that Article Third of Betty's will entitled him to the 84.587 acres that Betty inherited from Timothy, which would make appellant the fee simple owner of all 142.618 acres. Sheryl and Joseph moved for summary judgment, arguing that Article Third of Betty's will did not apply because Betty inherited the disputed acreage from Timothy, not her husband. They attached copies of the pleadings from Betty's 2007 and 2012 lawsuits against appellant as exhibits. The copy of the 2007 complaint reflects a filing stamp from the circuit court clerk, but the copy of the 2012 complaint does not. Nothing in the record indicates that the pleadings were certified copies. Appellant also moved for summary judgment and objected to any consideration of the exhibits.

In a letter opinion, the court found that the devise in Article Third of Betty's will had adeemed by extinction. The court reasoned that the inter vivos conveyances of Betty's interest in

the farm "completely change[d] the nature of the property and negated any intent on behalf of [Betty]" and her subsequent coincidental inheritance of Timothy's 84.587 acres did not "revive Article Third." Thus, the court found that the devise in Article Third "failed" and the 84.587 acres fell into the estate's residuary and passed to Joseph. Appellant moved for reconsideration, arguing that Code § 64.2-413 altered the common-law rule of ademption by extinction. The court denied the motion and entered a final order granting Sheryl and Joseph summary judgment. This appeal followed.

## ANALYSIS

"[I]n an appeal of a decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Shifflett v. Latitude Props., Inc.*, 294 Va. 476, 480 (2017) (quoting *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 196-97 (2017)).

A. Whether Code § 64.2-413 precludes application of the "ademption by extinction" doctrine

Code § 64.2-413, titled "Effect of subsequent conveyance on will," states:

> Except for an act that results in the revocation of a will
> pursuant to this article, any conveyance or other act done
> subsequent to the execution of a will shall not prevent the
> operation of the will with respect to such interest in the estate
> as the testator may have power to dispose of by will at the
> time of his death.

Appellant argues that Code § 64.2-413 "preclude[s] application of the common law doctrine of ademption by extinction and preserve[s] the validity and efficacy of the devise of Betty's interest in the [farm] to Glen" under the will. Appellant contends that Code § 64.2-413 revives the devise in Article Third because Betty reacquired an interest in the farm before she died and therefore had the "power to dispose of" it by will, despite the 2005 and 2012 inter vivos conveyances. Sheryl and Joseph respond that nothing in Code § 64.2-413 suggests that the "General Assembly expressly or plainly intended to abrogate [the] common law" and therefore the devise did in fact adeem.

- 4 -

"Because the issue before this Court is one of statutory interpretation, it is 'a pure question of law which we review de novo.'" *Brown v. Commonwealth*, 284 Va. 538, 542 (2012) (quoting *Kozmina v. Commonwealth*, 281 Va. 347, 349 (2011)). When interpreting statutes, "[t]he primary objective . . . is to ascertain and give effect to legislative intent." *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998). "Thus, this Court construes a statute 'with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it.'" *Brown*, 284 Va. at 542 (quoting *Esteban v. Commonwealth*, 266 Va. 605, 609 (2003)).

The General Assembly is "presumed to have known and to have had the common law in mind in the enactment of a statute." *Isbell v. Com. Inv. Assocs., Inc.*, 273 Va. 605, 614 (2007) (quoting *Wicks v. City of Charlottesville*, 215 Va. 274, 276 (1974)). "[T]his Court must read the enactments of the General Assembly . . . in conjunction with the common law, giving effect to both 'unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.'" *Jenkins v. Mehra*, 281 Va. 37, 44 (2011) (quoting *Isbell*, 273 Va. at 614). "Abrogation of the common law . . . occurs only when 'the legislative intent to do so is plainly manifested,' as 'there is a presumption that no change was intended.'" *Id.* (quoting *Isbell*, 273 Va. at 613-14).

We disagree with appellant's contention that Code § 64.2-413 precludes the "ademption by extinction" doctrine and preserves the efficacy of Article Third in Betty's will. Although the statute abrogated the common law in one respect, appellant's interpretation is overbroad.

Historically, under the English common law, "a conveyance of previously devised property" resulted in an implied revocation of the entire will. 79 Am. Jur. 2d *Wills* §§ 547, 584 (2023). Over time, however, this rule "has been quite generally abrogated or modified by statute." *Id.* § 584; *see also id.* § 547 ("Some jurisdictions have enacted statutes abolishing the rule that a conveyance of

previously devised property revokes the will, but it does revoke any provisions conveying that previously transferred devise."). Code § 64.2-413 is one such statute: it provides that a subsequent conveyance of a specific devise, even if significant, does not and cannot operate as a full revocation of an entire will.

Although no Virginia court has considered this statute or its predecessor, Code § 64.1-61,[3] we note that this statute is not unique to Virginia. *See* N.C. Gen. Stat. § 31-5.6; *see also* W. Va. Code § 41-1-9. For example, North Carolina Code § 31-5.6, titled "[n]o revocation by subsequent conveyance," states:

> No conveyance or other act made or done subsequently to the execution of a will of, or relating to, any real or personal estate therein comprised, except an act by which such will shall be duly revoked, shall prevent the operation of the will with respect to any estate or interest in such real or personal estate as the testator shall have power to dispose of by will at the time of the testator's death.

The North Carolina Court of Appeals has interpreted this statute as permitting "the conveyance of property which would comprise the estate under a will without revoking or altering that will." *Duncan v. Duncan*, 553 S.E.2d 925, 928 (N.C. Ct. App. 2001) (holding that, under North Carolina Code § 31-5.6, a testator's conveyance of the "bulk of her estate" prior to her death did not effectively revoke her will).

Appellant reads Code § 64.2-413 too broadly. Instead of precluding the "ademption by extinction" doctrine in this case, Code § 64.2-413 merely establishes that the only effect of a subsequent conveyance is an ademption. *See* 1 Wiggins, *Law of Wills & Trusts in N.C.* § 9:12

---

[3] Title 64.2 was recodified in 2012. Code § 64.2-413 is the recodified version of Code § 64.1-61 and was reworded, but remained substantively the same. Code § 64.1-61 stated,

> No conveyance or other act, subsequent to the execution of a will, shall, unless it be an act by which the will is revoked as aforesaid, prevent its operation with respect to such interest in the estate comprised in the will as the testator may have the power to dispose of by will at the time of his death.

(5th ed.) (noting that under North Carolina Code § 31-5.6, "[t]he only effect of the selling of such property is ademption, and the question of revocation is not involved").  Code § 64.2-413 applies here only to the extent that it establishes that Betty's subsequent 2005 and 2012 conveyances of the farm did not revoke her entire will.

Accordingly, the issue before us is whether the devise of property specifically described in Article Third of the will adeemed.  An ademption by extinction occurs when "the unique property that is the subject of the specific bequest has been sold, given away, or destroyed, or is not otherwise in existence at the time of the testator's death." *Ademption by extinction*, *Black's Law Dictionary* (11th ed. 2019).  "[I]f the identical thing bequeathed is not in existence, or has been disposed of, so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished, and the legatee's rights are gone." *Hood v. Haden*, 82 Va. 588, 599 (1886).

Article Third described Betty's devise as "any and all interest which I may receive from my said husband in the farm at Maybrook, Giles County . . . ."  Any interest in the farm Betty "receive[d] from [her] husband" expired in 2012, when she conveyed her remaining 141.618 acres to appellant.  *See May v. Sherrard*, 115 Va. 617, 623 (1913) (holding that a specific bequest is revoked if the testator disposes of the property before death); *see also Platt v. Griffith*, 299 Va. 690, 693 n.* (2021).  Appellant subsequently conveyed a portion of the property to Timothy and kept the rest.  Betty's unintentional reacquisition of part of the farm due to Timothy's death is immaterial.  The portion of the farm that Betty inherited as a result of Timothy's death was not the same property that was the subject of Article Third—it was not the "interest which [she] . . . receive[d] from [her] husband."  The interest she acquired in 2019 was from Timothy.  Thus, the "thing [devised]"—the interest in the farm she received from her husband—was no longer "in existence" as a result of the 2012 conveyance to appellant.  *Hood*, 82 Va. at 599.  Thus, we hold that the devise in Article Third of Betty's will adeemed.

B. Whether the will indicated a "contrary intention" under Code § 64.2-416(B) that Betty's interest in the farm should pass to appellant and not to Joseph under the residuary clause

Under Code § 64.2-416(B), if a devise "fails for any reason," it becomes part of the residue of the estate "[u]nless a contrary intention appears in the will." "The 'residue' of an estate encompasses everything that the testator did not specifically dispose of, as well as 'everything which turns out not to have been effectually disposed of.'" *Anderson v. Bowen*, No. 210798, 2022 WL 17491463, at *2 (Va. Dec. 8, 2022) (quoting *Prison Ass'n of Va. v. Russell*, 103 Va. 563, 571 (1905)); *see also Sheridan v. Perkins*, 186 Va. 465, 476 (1947) ("It is elementary that the purpose and import of [a residuary clause is] to dispose of the remaining property of the testator not specifically devised or bequeathed.")

Appellant argues that even if the devise of the farm adeemed, the interest in the farm Betty inherited from Timothy should not fall into the residuary because Article Third reflects Betty's "contrary intention" that appellant, not Joseph, should inherit the farm in full. Appellant relies on the language in Article Third in which Betty devised her original interest in the farm to appellant and Timothy as "joint tenants with the right of survivorship." He argues that her 2005 codicil, created after she had given Timothy an acre of the property, reaffirmed this intention.

"The 'cardinal principle' of will construction is that the intention of the testator controls." *Larsen v. Stack*, 298 Va. 683, 688 (2020) (quoting *Gillespie v. Davis*, 242 Va. 300, 303 (1991)). "We must determine the intention of the testator from the language which he has used, and if the meaning of that language is plain, the will must be given effect accordingly." *Id.* (quoting *Feeney v. Feeney*, 295 Va. 312, 317 (2018)). "To ascertain a testator's intention 'the whole will must be examined' and 'effect should be given to all [its] parts.'" *Id.* (alteration in original) (quoting *Feeney*, 295 Va. at 317).

While "effect must be given to the intention of the testator," that intention "must be manifested with legal certainty . . . for conjecture cannot be made to supply what the testator has

- 8 -

failed to sufficiently indicate on the face of the will." *Bd. of Missions of M.E. Church S. v. Brotherton*, 178 Va. 155, 159 (1941) (quoting *Neblett v. Smith*, 142 Va. 840, 848-49 (1925)). A contrary intention must "unmistakably appear" from the will. *Id.* at 161.

Without more, the joint tenancy language in Article Third, written before the inter vivos conveyances occurred, is insufficient to conclude with any "legal certainty" that Betty possessed a contrary intention that the farm should pass to appellant, not Joseph. *Id.* at 159 (quoting *Neblett*, 142 Va. at 849). Appellant's argument is contradicted by the fact that Betty's conveyances to Timothy and appellant during her lifetime happened separately and did not depend on any joint tenancy. Indeed, the conveyances caused the farm to divide into separate and distinct tracts. Moreover, the 2005 codicil does not reveal a contrary intention as it merely replaced the executors named in Betty's will, made no reference to her one-acre gift to Timothy or to Article Third, and predated the 2012 conveyance in which she lost all interest in the farm. Nothing suggests that when Betty made the inter vivos conveyances, she anticipated ever reacquiring any interest in the property. Appellant's argument that the joint tenancy language in Article Third reveals a contrary intention is not "manifested with legal certainty" and amounts to mere "conjecture." *Id.* (quoting *Neblett*, 142 Va. at 849).

### C. Whether the court erred in using Code § 8.01-389(A) as a basis for considering the complaints in Betty's 2007 and 2012 lawsuits against appellant

Finally, appellant argues that the court lacked authority to consider the complaints in Betty's lawsuits as "prima facie evidence" under Code § 8.01-389(A). He asserts that the records were not "records of [a] judicial proceeding" or an "official record of [the] court" and were not properly certified.

Code § 8.01-389(A) "codifies the official records exception to the hearsay rule," *Taylor v. Commonwealth*, 28 Va. App. 1, 12 (1998), and provides that "[t]he records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as

- 9 -

prima facie evidence provided that such records are certified by the clerk of the court where preserved to be a true record."

Here, the court erred in finding that it had authority to consider the complaints under Code § 8.01-389(A).  However, that error was harmless.

The hearsay exception in the statute only applies "if the document 'relates facts or events within the personal knowledge and observation of the recording official to which he could testify should he be called as a witness.'"  *Ingram v. Commonwealth*, 1 Va. App. 335, 339 (1986) (quoting *Williams v. Commonwealth*, 213 Va. 45, 46 (1972)).  A complaint does not relate "facts or events within the personal knowledge and observation of [a] recording official."  *Id*. (quoting *Williams*, 213 Va. at 46).  Moreover, nothing in the record indicates that the copies of the complaints considered by the court were certified records.  Although Sheryl and Joseph argue that the complaints were not considered "for the truth of the matter asserted" therein, that argument is belied by the court's factual finding that appellant "attempted to acquire the entirety of [the farm] in fee simple absolute for $25,000" and "then waited five years before again attempting to gain control" of the farm.

Despite the court's comments, however, the complaints are not "material" and do not "affect the outcome."  *Phoung v. Commonwealth*, 15 Va. App. 457, 465 (1992); *see also Forbes v. Rapp*, 269 Va. 374, 382 (2005) ("Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result.").  Regardless of the allegations in the 2007 and 2012 complaints, Betty's inter vivos disposal of the property was undisputed and completely extinguished the "interest [in the farm] which [she had] receive[d] from [her] husband."

## CONCLUSION

For these reasons, we affirm the judgment of the trial court.

*Affirmed.*

Chaney, J., dissenting.

Betty Atkins's will, Article Third section (a), specifically devises a tract of farmland to her two sons, Timothy and Glen, jointly, and with the right of survivorship. Because—at the time Betty's will was executed—the farmland was part of a larger undivided tract of land that Betty's husband held in partnership with Betty's brother-in-law, the will refers to the farmland as an interest in the undivided tract that Betty would receive from her husband. The tract of farmland corresponding to that interest became known only after Betty's husband died in 2005, and Betty received her husband's share of the larger tract.

Article Third section (a) of Betty's will provides:

> [t]o my sons, Timothy Lee Atkins and Curtis Glen Atkins, as joint tenants with the right of survivorship as existed at common law, so that upon the death of one of the parties, the entire fee simple interest in said real estate shall immediately become vested in the survivor, any and all interest which I may receive from my said husband in the farm at Maybrook, Giles County, Virginia, which farm is currently jointly owned by my husband and my brother-in-law . . . .

This provision clearly discloses Betty's intent and testamentary plan that the farmland be distributed to her sons Timothy and Glen, with the right of survivorship. Thus, Betty intended that if Glen survives Timothy, Glen would own the entire fee simple interest in the farmland. It is also clear that Betty did not intend that the farmland be distributed through the will's residuary clause.

I disagree with the majority's conclusion that the farmland Betty received from her brother-in-law is materially different from the same farmland Betty received from Timothy's estate. Considering the will in its entirety, I conclude that farmland from the tract Betty received from her brother-in-law—and which Betty owned at the time of her death—should be distributed pursuant to Article Third section (a), not the residuary clause. Since Betty intended that the survivor of Glen and Timothy own the entire fee simple interest in the farmland, distributing the farmland Betty received from Timothy to Glen via Article Third section (a) best implements Betty's testamentary

- 12 -

plan.  Since Betty did not intend that the farmland be distributed via the residuary clause, the trial court's decision to distribute the farmland to Joseph via the will's residuary clause *defeats* Betty's testamentary plan.

As stated in the majority opinion, subsequent to receiving the farmland from her brother-in-law, Betty gifted the land to her sons Timothy and Glen, and Glen gifted part of the farmland he received from Betty back to Timothy.  Timothy subsequently died, resulting in the transfer of his farmland from Timothy's estate back to Betty.  At death, Betty owned the farmland formerly owned by Timothy.  But Betty did not revoke or modify the provisions of her will relating to the farmland.

Although Article Third Section (a) necessarily describes the farmland in terms of Betty's husband's interest in a larger undivided tract, Betty used terms demonstrating that the intent of Article Third section (a) was to distribute the *farmland* corresponding to that interest.  Moreover, the fact that the farmland was conveyed to her sons Glen and Timothy, and partly conveyed by Glen to Timothy, before being transferred back to Betty, at most shows that the farmland was received by Betty—at different times—from *both* her husband and Timothy.

Formalistically focusing on the words "all interest I may receive from my said husband in the farm at Maybrook," the majority finds that when the farmland was transferred to Glen and Timothy, and then was transferred back to Betty from Timothy's estate, it was *materially changed* and thus no longer corresponded to the farmland identified in Article Third section (a).  But there is no dispute that the farmland *itself* did not change in any material respect.  The majority, focusing on Betty's *characterization* of the farmland as something Betty would receive from her husband's interest in the larger tract owned with his brother, concludes that the farmland Betty possessed at death is materially changed because Betty most directly received the farmland as a result of her interest in Timothy's estate.  Although the farmland owned by Betty at death was obtained as a

- 13 -

*direct* result of Betty's interest in Timothy's estate, the farmland owned by Betty at death was *also* the same farmland Betty received from her husband's interest in the farmland. Without doubt, upon receiving the farmland from Timothy's estate, Betty could truthfully assert that the farmland was farmland she obtained from her husband's interest in the farm jointly owned with Betty's brother-in-law.

Moreover, any change in Betty's intent subsequent to the execution of the will, and not reflected in an actual modification of Betty's will, is irrelevant. Although Betty's subsequent *inter vivos* transfers of the farmland were not made conditional on any right of survivorship between Timothy and Glen, Betty did not modify her will. Any change in Betty's intent discernible from the manner in which the *inter vivos* transfers of the farmland occurred has no bearing on the construction of the *will*.

Given that the farmland at issue can be characterized *both* as farmland Betty received from Timothy's estate and farmland Betty received from her husband's interest in the farm, the disposition of the farmland is controlled by Code § 64.2-413. Code § 64.2-413 precludes reliance on Betty's *conveyances or other acts* to prevent the distribution of the farmland that Betty owns at the time of her death in accordance with Article Third section (a). Code § 64.2-413, titled "Effect of subsequent conveyance on will" provides:

> Except for an act that results in the revocation of a will pursuant to this article, any conveyance or other act done subsequent to the execution of a will shall not prevent the operation of the will with respect to such interest in the estate as the testator may have power to dispose of by will at the time of his death.

There is no dispute that Betty's will was not revoked, as provided in Code § 64.2-410. *See* Code § 64.2-410 (enumerating methods for revoking or modifying a will). Betty did not destroy the will or execute another will. *See id.* Although Betty executed a codicil that changed the named executors of her will, that codicil contained no provision inconsistent with Article Third section (a).

*See id.* Moreover, Betty's *inter vivos* transfer of the farmland to Timothy and Glen are precisely the "conveyance[s] . . . [and] act[s] done subsequent to the execution of the will" that do *not* prevent Betty's will from conveying the farmland to Glen by operation of Article Third section (a). Although Code § 64.2-413 limits the operation of Article Third section (a) to the farmland owned by Betty at death, it plainly *requires* conveying the farmland that Betty owned at death without regard to intervening acts and conveyances.

I also disagree with the majority's conclusion that Betty's *inter vivos* transfers adeemed Article Third section (a) by extinction. According to the common law of ademption by extinction, an *inter vivos* transfer of property defeats a will conveying that property. Code § 64.2-413 thus abrogates the common law of ademption by preserving will provisions from ademption to the extent that the property is owned at death. The majority, observing that statutes abrogating the common law are to be construed narrowly, limits Code § 64.2-413 to only preserve a will provision from ademption if the *inter vivos* conveyance of the property at issue is partial. But narrowly construing a statute does not warrant redrafting the statute to include a restriction omitted by the General Assembly. Code § 64.2-413 plainly limits the common law of ademption to property not owned at death, and Betty owned farmland she obtained from her husband's interest in the farm at death.

Because Betty's testamentary plan manifests a clear intent that the farmland at issue be owned by Glen, as the survivor of her two sons Timothy and Glen, and the farmland Betty owned at death is farmland Betty obtained from her husband's interest in the farm at Maybrook, I would reverse the trial court's contrary determination that the farmland be distributed via the will's residuary clause.

Accordingly, I respectfully dissent.

- 15 -