## Richmond

WILLIEN ANDREWS, EXECUTRIX OF THE ESTATE OF HORACE J. ANDREWS, DECEASED v. WILLIS E. CAHOON AND THOMAS L. WOODWARD, EXECUTORS OF THE ESTATE OF A. M. MCBRIDE, DECEASED, ET AL.

O. W. WILLIAMS AND LOUIS KOUTOULAKOS v. WILLIS E. CAHOON AND THOMAS L. WOODWARD, EXECUTORS OF THE ESTATE OF A. M. MCBRIDE, DECEASED, ET AL.

March 7, 1955.

Record Nos. 4330, 4331.

Present, All the Justices.

The opinion states the case.

*Thomas, Strauss & Waller*, for appellant, Andrews, Executrix.

*J. Lindsay Almond, Jr., Attorney General; Sands, Marks & Sands; Wicker, Baker & Shuford; J. Calvitt Clarke, Jr.; Louis Koutoulakos; John D. Clark; George E. Haw; Charles Henry Smith*, for appellees, Cahoon and Woodward, Ex'rs.

*Louis Koutoulakos; Paul Varoutsos; Homer Thomas; Miles Spence Bray*, for appellants, Williams and Koutoulakos.

*J. Lindsay Almond, Jr., Attorney General; Sands, Marks & Sands; Wicker, Baker & Shuford; Brockenbrough Lamb, Jr.*, for appellees, Cahoon and Woodward Ex'rs.

EGGLESTON, J., delivered the opinion of the court.

On May 3, 1951, A. M. McBride,[1] suing for the benefit of himself and all others similarly situated, filed his bill of complaint in the court below alleging that The Preferred Accident Insurance Company of New York, a corporation organized under the laws of that State, with authority to transact an indemnity insurance business, and licensed to do such business in Virginia, had been adjudicated to be insolvent by proceedings in the State of New York, and that its authority to do business in Virginia had been revoked; that pursuant to the requirements of the laws of Virginia, the Insurance Company had previously deposited with the Treasurer of Virginia certain securities in the face amount of $45,000 "for the protection of citizens of this State" against its liability to them; that the plaintiff is a citizen of Virginia and has a claim against the Insurance Company, and pursuant to the laws of this State

---

[1] In May, 1953, McBride died and the suit was revived in the names of Willis E. Cahoon and Thomas L. Woodward, the executors of his estate.

has a lien on the securities so deposited with the State Treasurer; and that other citizens of Virginia are similarly situated, with claims against the Insurance Company and a lien on such securities.

The Insurance Company and the Treasurer of Virginia were made parties defendant to the bill. The prayer was that a receiver be appointed to take charge of all of the assets of the Insurance Company located in this State, including the securities in the hands of the State Treasurer; that the business of the Insurance Company in this State be wound up and liquidated under the supervision and control of the court; and that its assets in Virginia be ratably distributed to the plaintiff and other creditors in such proportions as might be determined to be right and proper.

A decree was entered appointing Thomas L. Woodward and Brockenbrough Lamb, Jr., as special receivers of all of the assets of the Insurance Company "located within the Commonwealth of Virginia."[2]

The Treasurer of Virginia filed an answer admitting that the Insurance Company had deposited with him certain securities in the face amount of $45,000. The Insurance Company filed no answer to the bill, but through its counsel, E. Ballard Baker, a member of the Richmond bar, appeared and took active part in the proceedings hereinafter referred to.

On July 17, 1951, a decree was entered referring the cause to Sam B. Witt, Jr., a commissioner in chancery, with directions to take an account, among others, of the assets of the Insurance Company within the jurisdiction of the court and all claims against it "arising from or growing out of its business operations in Virginia, with the priorities, if any, as between the said claims."

On November 14, 1952, the commissioner filed a report listing the claims of thirty-three creditors totaling $37,010.84, which had been properly proven "as liens against the statutory deposit."

---

[2] By decree entered May 22, 1953, the resignation of Woodward as receiver was accepted and Lamb was authorized to continue as sole receiver.

The report also listed fifteen claims totaling $28,297.11, as those which had been "brought to the attention of the commissioner but as to which no sufficient proof has been offered, or otherwise not provable herein." Among these was the claim of "Horace J. Andrews Estate v. O. W. Williams" for $7,500, and that of "Louis Koutoulakos, Attorney at Law, * * * Re: Andrews Estate v. O. W. Williams," for $750. Exceptions were filed to the disallowance of these two claims. Moreover, Willien Andrews, executrix of the estate of Horace J. Andrews, deceased, filed a petition in the cause, alleging that on October 21, 1952, she had obtained a judgment against Williams in the United States District Court for the Eastern District of Virginia, at Alexandria, for the sum of $7,500 for the wrongful death of Andrews who was killed on March 24, 1951, in a motor vehicle collision in which a truck owned and operated by Williams was involved; that at the time of the accident Williams was protected by a liability insurance policy issued by the Insurance Company and covering the truck; that in due course Williams had reported the accident to the Insurance Company; and that by letter dated October 22, 1952, Woodward, one of the special receivers, had been notified of the judgment.

Williams joined in the prayer of the petition of the executrix that this claim be allowed and paid in the receivership proceedings.

On December 29, 1952, a decree was entered directing Witt, the commissioner in chancery, to report upon whether the Andrews claim should be paid. Depositions were taken before the commissioner with respect to the Andrews claim of $7,500 and that of Koutoulakos for $750. Shortly after the hearings had been concluded the commissioner filed a report disallowing both claims. From a decree confirming this report and disallowing the claims, Williams, Andrews' executrix and Koutoulakos have appealed.

Counsel for the Insurance Company and counsel for five creditors whose claims had been approved by decrees in the lower court, have filed a joint motion to dismiss the appeal

as improvidently awarded, on the ground that all of the creditors whose claims had been approved and allowed were not served with copies of the notice of appeal and assignments of error, designation of parts of the record to be printed, and the petitions for appeal, as required by the rules of this court.

The record shows that copies of these documents were mailed or delivered to counsel for these parties: McBride, the plaintiff; Jesse W. Dillon, the State Treasurer; The Preferred Accident Insurance Company of New York and Alfred J. Bohlinger, its New York liquidator; and each creditor whose claim was *contested before the commissioner* and allowed by decrees of the lower court. The appellants insist that this is a sufficient compliance with the rules.

Rule 5:1, § 4, provides in part that "No appeal shall be allowed unless, prior to the expiration of sixty days after final judgment, counsel files with the clerk notice of appeal and assignments of error. * * *"

Rule 5:1, § 6(a), provides that, "Not less than twenty days before the record is transmitted [to the clerk or a justice of the appellate court], counsel for appellant shall file with the clerk [of the trial court] a designation of the parts of the record that he wishes printed. * * *"

Rule 5:3, § 4, provides: "Before any petition for appeal is presented or filed, a copy thereof shall be mailed or delivered to *opposing counsel* in the trial court and the petition shall aver the date of such mailing or delivery. * * *" (Italics supplied.)

Rule 5:1, § 2, defines "counsel" to include "a party not represented by counsel." It further provides: " 'File with the clerk' means deliver to the clerk a paper, a copy of which has been served on or delivered to *opposing counsel*." (Italics supplied.)

Rule 5:3, § 2(a) provides: "If there were more than two parties in the court below, there must be appended to the petition for appeal a certificate giving the names of the parties joining in the appeal and the names of the parties against whom the appeal is sought. The clerk of this Court will rely on the

information so furnished in issuing the summons required by Code, Section 8-490."

Code, § 8-490, referred to in Rule 5:3, § 2(a), provides in part that the clerk of the Supreme Court of Appeals "shall issue a summons against the parties interested, other than the petitioners, that they may be heard, * * * ."

In *D. F. Tyler Corp. v. Evans*, 156 Va. 576, 579, 580, 159 S. E. 393, we held that the process or summons required by Code, § 8-490, "simply matures the case for hearing" in this court, and that its issuance and service are not essential to the perfecting of a writ of error or appeal. See also, *Hackley v. Robey*, 170 Va. 55, 58, 59, 195 S. E. 689, 690.

But we have held that the requirement for filing the notice of appeal and assignments of error under Rule 5:1, § 4, *supra*, is mandatory and jurisdictional, for under the express terms of the rule "No appeal shall be allowed" unless such notice of appeal and assignments of error are filed within the prescribed time. *Skeens v. Commonwealth*, 192 Va. 200, 203, 64 S. E. (2d) 764, 766; *Harlow v. Commonwealth*, 195 Va. 269, 271, 77 S. E. (2d) 851, 853.

We have further held that the requirement for filing a designation of the parts of the record to be printed, under Rule 5:1, § 6(a), *supra*, is likewise mandatory and jurisdictional. *Avery v. County School Board*, 192 Va. 329, 335, 64 S. E. (2d) 767, 771.

The appellees are correct in their position that in a creditors' suit, such as that with which we are here concerned, all persons who appear and prove their claims before the commissioner under an order of reference becomes parties to the cause. Lile's Equity Pleading and Practice, 3d Ed., § 426, p. 252. Consequently, where a reversal or modification of the decree appealed from will adversely affect the rights of such creditors, they, or counsel representing their interest in the litigation, must be served with the notices required of the appellant in perfecting an appeal under the rules.

The record here shows that when the claims of these ap-

pellants were before the commissioner, counsel for the Insurance Company and its New York liquidator appeared in opposition to their allowance. He took an active part in cross-examining the witnesses and vigorously contested each of the claims, as it was his duty to do in the interest of conserving the fund sought to be subjected. On the other hand, except for the plaintiff, McBride, not a single one of the creditors whose claims had been previously allowed by the commissioner and who now join in the motion to dismiss, appeared either in person or by counsel, or took any interest in contesting appellants' claims. They left such contest entirely to counsel for the Insurance Company, knowing full well that if he succeeded in having appellants' claims disallowed they, as creditors whose claims had been allowed, would proportionately benefit thereby.

Moreover, counsel for the Insurance Company and its New York liquidator has joined with counsel for the executors of McBride, one of the principal creditors, in filing a brief and presenting an oral argument to this court seeking an affirmance of the decree which disallowed these claims. Clearly, under such circumstances, counsel for the Insurance Company and its New York liquidator occupied the position of "opposing counsel" to appellants within the meaning and purpose of the rules. Consequently, service of the required notices upon him, and the other counsel of record, was a sufficient compliance with the rules. The motion to dismiss is overruled.

■ The pertinent facts with respect to appellants' claims are these:

On March 24, 1951, a truck owned by O. W. Williams, a resident of Fairfax county, Virginia, and driven by his employee or agent, was involved in a collision with another vehicle in that county. Horace J. Andrews, an employe of the United States Department of Agriculture and an occupant of the other vehicle involved, was killed. At the time of the collision the Williams truck was covered by a liability policy issued by The Preferred Accident Insurance Company. Prompt notice of the accident was given by

Williams to an agent of the insurer which conducted a full investigation of the matter.

On April 30, 1951, an order was entered by the Supreme Court of the State of New York for the County of New York for the liquidation of The Preferred Accident Insurance Company and Alfred J. Bohlinger, as Superintendent of Insurance of that State, was directed to take possession of its property and liquidate its business and affairs. As has been said, the present ancillary receivership proceedings were begun in the Circuit Court of the city of Richmond on May 3, 1951.

In September, 1951, Woodward and Lamb, the Virginia receivers, and Witt, the commissioner in chancery to whom the cause had been referred, were notified of the pendency of the claim on behalf of the estate of Horace J. Andrews against O. W. Williams, and the contingent liability of The Preferred Accident Insurance Company under the liability policy which it had issued to Williams. They were also notified that the Bureau of Employees' Compensation of the United States Department of Labor, which was paying compensation to the widow of Andrews, had an interest in the same claim. The Virginia receivers denied liability for the claim against the Insurance Company.

In January, 1952, Willien Andrews, executrix of the estate of Horace J. Andrews, deceased, instituted an action at law in the United States District Court, at Alexandria, Virginia, against Williams to recover damages for the wrongful death of the decedent as the result of the automobile collision. M. T. Broyhill & Sons, the local agency which had written the policy on the Williams truck, wrote the Virginia receivers of this suit and suggested that Louis Koutoulakos, who was appearing as counsel for Williams in connection with other litigation arising out of the same collision, be authorized to defend the Andrews suit. In reply, Woodward, one of the receivers, wrote Broyhill that the receivers could not authorize the employment of counsel to defend the Andrews suit, that "The proper procedure is for the assured

to select and employ his own counsel to represent him in the cause," and that upon the presentation of a claim by Williams it could be determined whether there was any liability on the Insurance Company for the payment of the counsel fee thus incurred.

Thereupon Koutoulakos was employed to defend the Andrews suit on behalf of Williams, and the "suit papers" were delivered to him. Koutoulakos made the necessary investigation of the circumstances of the collision and defended the Andrews suit in the district court, which resulted in a verdict and judgment of $7,500 in favor of Andrews' executrix against Williams. For his services rendered to Williams, Koutoulakos made a charge of $750 which the undisputed evidence shows is a fair and reasonable fee.

On October 22, 1952, Koutoulakos wrote the commissioner in chancery telling him of the outcome of the Andrews suit against Williams, advising him that the amount of the judgment, $7,500, was within the limits of the policy covering the Williams truck, and that he (Koutoulakos) was "submitting a claim on behalf of O. W. Williams" for the amount of the judgment and an attorney's fee of $750.

On January 30, 1953, the Bureau of Employees' Compensation of the United States Department of Labor filed a proof of claim in the liquidation proceedings in New York, asking that the amount of the judgment which the executrix had recovered against Williams be paid to the Bureau, as assignee of the decedent's estate. This proof of claim asserted that the Bureau had paid compensation to Andrews' widow, and that the suit of the executrix against Williams had been brought at the direction and for the benefit of the Bureau.

The report of the commissioner in chancery, which was confirmed by the decree of the lower court, disallowed the claims of the appellants on the grounds that, (1) Since the decedent, Horace J. Andrews, and the executrix of his estate were not residents of Virginia, the estate is not entitled to share in the statutory deposit; (2) Neither the receivers nor the New York liquidator authorized the employment of

Koutoulakos to defend the Andrews suit; (3) The claims cannot be sustained through or on behalf of Williams because he failed to comply with the terms of the policy, in that he did not forward to the Insurance Company or the New York liquidator the summons or process in the Andrews suit received by him; (4) The Andrews claim was not established under the applicable provisions of the laws of the State of New York; and (5) The Andrews claim should have been asserted in the name of the Bureau of Employees' Compensation of the United States Department of Labor, as subrogee of the decedent's estate.

The deposit of the securities with the Treasurer of Virginia was made pursuant to Code, § 38-39.[3] Code, § 38-50, which was in effect at the time of the institution of the suit,[4] provides in part: "Bonds deposited under the provisions of sections 38-39 and 38-41 shall be held as security for liabilities incurred * * * to this State and the political subdivisions thereof, to the citizens and inhabitants of this State, and to other persons, natural and artificial, owning property in this State who may sustain a loss in consequence of the failure of such company to meet its obligations incurred in this State, to secure policyholders, * * * and, subordinate to the claims of policyholders, to secure * * * the general creditors of any such company, and they shall have a lien thereon * * * ."

Clearly, Williams, a citizen and inhabitant of this State, and a resident policyholder, is within the class of persons for whose benefit the statutory deposit was required. The Andrews estate and Koutoulakos claim through Williams. The Andrews judgment which is admittedly within the limits of the coverage afforded in the policy, is a liability against which the Insurance Company agreed to protect Williams. Under the terms of the policy the Insurance Company agreed to "pay on behalf of the insured all sums which the insured shall be-

---

[3] This section was repealed by Acts 1952, ch. 317, p. 422, and superseded by 1952 Supp., § 38.1-108, Acts 1952, p. 446.

[4] This section was repealed by Acts 1952, ch. 317, p. 422, and superseded by 1952 Supp., § 38.1-110, Acts 1952, p. 447.

come legally obligated to pay as damages because of bodily injury, * * * including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile" mentioned in the policy. It is quite beside the point that in discharging its obligation to Williams, a resident policyholder, the money required to satisfy the judgment may go to a non-resident.

■ The claim of Williams for reimbursement for the attorney's fee due Koutoulakos does not rest upon the employment of Koutoulakos by the Virginia receivers or the New York liquidator, as the report of the commissioner indicates it must rest. The policy in terms provides: "As respects the insurance afforded by the other terms of this policy * * * the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless; * * * ." Admittedly the Insurance Company breached its contract in this respect and failed to defend the suit instituted against Williams. Consequently, he was forced to employ counsel for that purpose. The evidence is undisputed that the services were rendered by Koutoulakos and that his charge of $750 therefor is fair and reasonable.

While Andrews' executrix, the judgment creditor, and Koutoulakos, the attorney, have filed claims in this proceeding, it also appears from the record that claims on behalf of Williams, both for indemnity against the Andrews judgment as well as for reimbursement for the fee for services rendered by Koutoulakos, were likewise filed.

■ Since the Andrews estate and Koutoulakos claim through Williams, their rights can rise no higher than his. If Williams has lost his rights under the policy these two creditors have lost theirs. But we do not agree with the finding of the commissioner that these claims on behalf of Williams may not be sustained because, as the report holds, Williams lost his rights under the policy when he failed to forward to the Insurance Company or its New York liquidator

the summons or process in the Andrews suit as was required by the terms of the policy.

It is true, as the appellees point out, that failure to forward a summons to the insurer within a reasonable time, as required by the terms of the policy, may result in the forfeiture of the rights of the insured. *Harmon* v. *Farm Bureau Mut. Automobile Ins. Co.*, 172 Va. 61, 65, 200 S. E. 616, 618, and authorities there cited. But it is well settled that such a provision may be waived or that there may be circumstances which render it unnecessary that it be complied with. The purpose of such requirement is to enable the insurer to inform itself promptly concerning the accident, to investigate the circumstances, and prepare a timely defense, if necessary, on behalf of the insured. Compliance with such a provision is unnecessary and serves no good purpose where the insurer has disclaimed liability under the policy. *Yanago* v. *Aetna Life Ins. Co.*, 164 Va. 258, 268, 269, 178 S. E. 904, 907.

In the present case, as has been said, Williams, the insured, notified the local agent of the Insurance Company of the pendency of the suit and that agent in turn passed the information on to the Virginia receivers. In reply, Woodward, one of the receivers, wrote the local agent that the receivers could not authorize the employment of counsel to defend the suit and that Williams should take such steps as were necessary to protect his interest. Thus, the Virginia receivers disclaimed any responsibility for defending the suit, and it would have been useless to forward the suit papers to them.

Moreover, on April 23, 1953, a representative of the New York liquidator wrote Koutoulakos that, "It is not the policy of the Liquidator and contrary to all concepts of liquidation or bankruptcy proceedings for the receiver to defend actions brought against policyholders." Further, this letter stated, "We do not intend to defend any suit against Mr. Williams and can have no interest in the result thereof." The letter further approved of the action of the Virginia receivers "in refusing to appoint counsel to represent Mr. Williams," since

as it said, this would have constituted "a waste and unlawful use of funds for which they would be personally liable."

While this last-mentioned letter was written after the disallowance of the claims by the commissioner, it shows beyond question that the delivery of the suit papers to the Insurance Company or its New York liquidator would have been quite useless. Why should the insolvent Insurance Company or the liquidator be notified of the pending suit if they had no intention of defending it on behalf of the insured?

As a further reason for disallowing the claim arising out of the Andrews suit, the commissioner's report said that a proceeding therefor "should be brought under applicable provisions of the New York Liquidation Laws against the New York liquidator, and is not properly the consideration of this court in this proceeding." The report contains no elaboration or explanation of this brief statement. But as we interpret the brief of the appellees, their position, apparently adopted by the commissioner, is that at the time the Insurance Company was placed in liquidation in the New York court the Williams claim for indemnity under the policy was "contingent," and that under the laws of the State of New York its validity should have been determined in the New York proceeding.

We do not agree with this position. Williams might have proved his claim for indemnity in the New York proceeding, but he was not compelled to do so. Code, § 38-50 (1952 Supp., § 38.1-110), prescribes the appropriate procedure for enforcing the claims of Virginia creditors against the statutory deposit in this language: * * * whenever any such company, depositing bonds as aforesaid, shall have become insolvent or bankrupt, or shall have made an assignment for the benefit of its creditors, any person given a lien by this section may file a bill in the circuit court of the city of Richmond for the benefit of himself and all others given a lien by this section to subject such bonds to the payment of the liens thereon. The State Treasurer shall be made a party to any such suit, and the funds shall be distributed by the court."

Under this provision the Circuit Court of the city of Richmond, in which the present cause is pending, is given full jurisdiction and authority to adjudicate the validity of the claims of the Virginia creditors and "to subject such bonds to the payment of the liens thereon." See 44 C. J. S., Insurance, § 134(b), p. 747.

Neither do we agree with the finding of the commissioner that the Williams claim for indemnity against the Andrews judgment should be rejected because the Bureau of Employees' Compensation of the United States Department of Labor, as subrogee of the decedent's estate, may have an interest in the judgment. Of course, it should be determined as between the executrix and the Bureau to whom the proceeds of the judgment or the dividend on the claim should be paid. It appears from the present record that there is no conflict of interest between the executrix and the Bureau. Counsel for the executrix stated to the commissioner at one of the hearings on the claim that he had been retained to represent both interests. However, unless the executrix and the Bureau agree as to the distribution of the proceeds between them, the lower court should settle and determine the issue.

In addition to the reasons advanced by the commissioner, the appellees say that the Andrews claim should be disallowed because the judgment which the executrix obtained against Williams in the United States District Court was void in that the executrix was a "nonresident personal representative of a nonresident decedent" and could not maintain an action for wrongful death in this State under Code, § 8-633, et seq. It is argued that since under the provisions of Code, § 26-59, as amended by Acts 1950, ch. 399, p. 724, a nonresident may not "qualify or act as personal representative" in this State unless a resident be appointed to serve with him, such nonresident may not maintain an action for wrongful death in this State, and that the Circuit Court of Appeals for the Fourth Circuit has so held in the recent case of *Holt v. Middlebrook*, 4th Cir. 214 F. (2d) 187.

In the *Holt* case a motion to dismiss the action for wrongful death brought by a foreign personal representative was made and sustained in the district court and affirmed on appeal. In the present case the incapacity of the executrix to maintain the suit was not raised in the district court, nor was it raised in the lower court in the present proceedings. It will not be considered for the first time on this appeal. 4 C. J. S., Appeal and Error, § 264-i, p. 515. See also, *Crawley* v. *Glaze*, 117 Va. 274, 277, 84 S. E. 671.

For these reasons the decree appealed from, in so far as it disallows the claims of Williams for indemnity against the Andrews judgment and for reimbursement for the counsel fee due by him to Koutoulakos, is reversed. The cause is remanded to the lower court with direction that a decree be entered allowing these claims as liens on the statutory deposit. In an appropriate manner, the court should determine to whom the proceeds of the Andrews judgment or any dividend thereon should be paid.

*Reversed and remanded.*