## Richmond

Morris T. Warner, Et Al. v. Fred S. Baylor, Sole Executor, Etc., Et Al.

Boys' Home, Incorporated v. Fred S. Baylor, Sole Executor, Etc., Et Al.

January 20, 1964.

Record Nos. 5656, 5657.

Present, All the Justices.

The opinion states the case.

*George M. Cochran* and *Frank L. Summers, Jr.* (*Philip Lee Lotz; R. E. Cabell, Jr.; Nelson, McPherson & Summers*, on brief), for appellants, Morris T. Warner, et al.

*Lester I. Bowman*, for appellant, Boys' Home, Incorporated.

*James N. Kincanon; Tom Stockton Fox*, for appellees, Anne Funkhouser Francis, Mae Dillon Ferguson, in her own right and as Administratrix, &c.; *B. C. Goodloe, guardian ad litem*, for Mary Starke Ferguson, infant, appellee, on brief. Record No. 5656.

*James N. Kincanon; Tom Stockton Fox*, for appellees, Mae Dillon Ferguson, in her own right and as Administratrix, &c., and Anne Funkhouser Francis. Record No. 5657.

I'ANSON, J., delivered the opinion of the court.

S. D. Ferguson and Fred S. Baylor, as executors under the will of Mary Woodward Williams, deceased, filed a bill against Anne Montgomery Woodward; Edward Woodward, Jr.; Arthur Barnette; Alvin Williams, Jr.; Pauline Grider French; Morris T. Warner, Gilpin Willson, Jr., and George M. Cochran, Trustees of Trinity Protestant Episcopal Church, Staunton, Virginia; Bettie Bickle Home, Incorporated; Virginia Hilton Sommerville; Fred S. Baylor, individually; Augusta National Bank of Staunton, Trustee; King's Daughters' Hospital of Staunton, Virginia; Boys' Home, Incorporated; Mary Scott Ferguson Taylor; Anne Funkhouser Francis; Milton Winter Ferguson; Mae Ferguson; and Mary Starke Ferguson, an infant; all legatees under the will of certain common stock of

American Telephone and Telegraph Company (hereinafter called A. T. & T.) and/or Westinghouse Electric Corporation (hereinafter called Westinghouse). The bill asked, *inter alia,* for interpretation of the will and the guidance and direction of the court in the distribution of these stocks.

It was alleged in the bill, *inter alia,* that after the testatrix executed her will A. T. & T. issued two additional shares of its common stock to the holder of each outstanding share, the three shares having the same aggregate par value as the one original share, and at the time of testatrix's death she owned three shares for every one she owned at the time of execution of her will; and that subsequent to execution of the will Westinghouse issued one additional share to the holder of each outstanding share of its common stock, the two shares having the same aggregate par value as the one share, and that testatrix at the time of her death owned two shares for every one she owned at the time of the execution of her will.

All of the parties defendant filed their answers admitting the allegations of the bill except Arthur Barnette; Alvin Williams, Jr., Fred S. Baylor and Mary Scott Ferguson Taylor. The infant answered by her guardian *ad litem.* Anne Funkhouser Francis; Milton Winter Ferguson, now deceased; Mae Ferguson; and the infant (by her guardian *ad litem*); who are all legatees under the residuary clause of the will and appellees herein, asserted in their answers that they were entitled to receive the additional shares of stock issued after the will was executed. On the other hand, the other defendants who answered the bill, most of whom are appellants herein, asserted that they were entitled to a proportionate part of the additional shares of stock in order to receive the interest in the corporations that they would have received had there been no change in the corporate structures.

The cause was referred to a special master commissioner, who, after an *ore tenus* hearing, reported that the A. T. & T. and Westinghouse stock was split in accordance with the allegations in the bill; that the evidence was insufficient to show a scheme or plan of testamentary disposition of testatrix's estate; and that the legatees of specified numbers of shares of stock were entitled to receive only the number designated in the will and not the additional shares resulting from the splits, which pass to the residuary legatees.

The chancellor entered a decree sustaining the commissioner's report and directing the surviving personal representative under the will to distribute the A. T. & T. and Westinghouse stock in accord-

ance with the commissioner's findings. From that decree we granted an appeal to the trustees of Trinity Church; Boys' Home, Inc.; Anne Montgomery Woodward; Edward Woodward, Jr.; Pauline Grider French; Fred S. Baylor, individually; Sunnyside Presbyterian Home, Inc., successor to Bettie Bickle Home, Inc.; and King's Daughters' Hospital (Record No. 5656); and a separate appeal to the Boys' Home, Inc. (Record No. 5657); all appellants herein.

At the outset we are confronted with motions to dismiss both appeals on the grounds (1) that in Record No. 5656 appellants failed to join Arthur Barnette, Alvin Williams, Jr., and Virginia Hilton Sommerville as parties to the appeal either as appellants or appellees, and Mary Scott Ferguson Taylor, one of the residuary legatees under the will, as party appellee; (2) that in Record No. 5657 the infant residuary legatee, Mary Starke Ferguson, and her guardian *ad litem*, were omitted as parties; and (3) that appellants failed to comply with Rules of Court 5:3, § 1; 5:3, § 2(a); 5:12, § 1(c); and 5:12, § 1(d), in both appeals.

All of the aforementioned persons were properly before the court below where the cause was considered as one case, and it is likewise considered as one appeal, on one record, in this Court. Boys' Home, Inc., was a party appellant in both appeals. Arthur Barnette, Alvin Williams, Jr., and Virginia H. Sommerville were legatees of designated numbers of shares of stock under the will and they are in the same class and have the same interest as all the appellants. It would indeed be a novel situation if an appeal could not be maintained by one party because another having a similar interest failed to appeal.

Moreover, Barnette, Williams and Mary Scott Ferguson Taylor, the latter being one of the residuary legatees, made no appearance in the court below or in this Court. Mary Scott Ferguson Taylor was made a party appellee in this Court (Record No. 5657) and a copy of appellant's petition was mailed to her. Her interests were in the same class as the other legatees sharing in the residuum, whose positions were fully and ably argued before this Court. Her failure to participate in the proceedings either in the court below or in this Court is indicative of the fact that she was leaving her interests entirely to the courts for interpretation, without asserting any position in the matter, recognizing that she would be bound by this Court's findings.

While it is true that Mary Starke Ferguson was not named as a party to Record No. 5657, she was represented in this Court by her guardian *ad litem* in Record No. 5656. Since we consider this appeal

as only one case, although there were two records, she was properly before us.

The interests of all parties were before us, either actively or by representation, and the motions to dismiss both appeals for non-joinder of parties are overruled. *Andrews, Executrix* v. *Cahoon*, 196 Va. 790, 796, 797, 86 S. E. 2d 173, 177.

We have carefully examined appellees' contentions that the afore-mentioned Rules of Court have not been complied with, and while it may be said that some of the rules have not been followed in their strictest sense, the minor defects complained of are not jurisdictional and do not justify sustaining the motions to dismiss the appeal on those grounds. Hence the motions are overruled.

The appellants' principal contention is that the chancellor erred in holding that they were not entitled to receive their portion of the additional shares received by the testatrix as the result of the stock splits.

The will of the testatrix was executed on April 9, 1958, and after providing for the payment of debts and all taxes, including inheritance taxes on bequests, under separate clauses of Article III she bequeathed 180 shares of A. T. & T. common stock to nine individuals, organizations or corporations, and 135 shares of Westinghouse common stock to five of the same individuals who received the A. T. & T. stock. The bequests, except for name of the legatee and number of shares given, read as follows:

"I give and bequeath unto ————— ——shares of common stock of the American Telephone and Telegraph Company; [and] —— shares of common stock of Westinghouse Electric Company."

By separate clauses under Article III, testatrix gave several legacies in cash, and under another clause she bequeathed specific articles of personal property to three of the same individuals to whom she gave A. T. & T. and Westinghouse stock.

In Article IV, testatrix bequeathed to Augusta National Bank, as trustee for King's Daughters' Hospital:

"One hundred shares of common stock of American Telephone and Telegraph Company;

"One hundred and seventy five shares of common stock of West-inghouse Electric Company;

"Fifty shares of stock of Crane Company;

"Fifty shares of common stock of The Chesapeake & Ohio Railway Company;

"Fifty shares of common stock of Bethlehem Steel Corporation;

"Twenty-five shares of common stock of Kennecott Copper Company; and

"Two hundred shares of common stock of Noland Company; * * *."

Testatrix directed that the trustee "take and hold" the stocks and pay the net income from the trust to the hospital to be used for the care and treatment of patients who are unable to pay for their hospitalization. The usual provision authorizing trustee to sell any or all of the stocks and reinvest the proceeds was also included. She provided that this trust be known as the "James Hamilton Woodward Memorial" in memory of her first husband.

Under Article V, testatrix bequeathed to the Augusta National Bank, in trust, for the Boys' Home the same number of shares of stock in the same corporations as were given in trust for King's Daughters' Hospital in Article IV. The net income from this trust was to be used for the support and maintenance of the home and the boys residing there. Other provisions in the trust were the same as those in Article IV. She directed that this trust be known as the "Ralph Dwight Williams Memorial," in memory of her second husband.

In both trusts the executors were authorized to pay the trustee's commissions on the principal of the trusts out of the residue of testatrix's estate.

In Article IX, testatrix provided that the residue of her estate was to be divided into three equal shares, as follows: one share to Mary Scott Ferguson Taylor; the second share to Anne Funkhouser Francis; and the third share in trust for Milton Winter Ferguson, Mae Ferguson, and Mary Starke Ferguson. The commissions to the trustee on the principal of this trust were to be paid out of its corpus.

Appellees made a general objection to the taking of any evidence which would "vary the terms of Mrs. Williams' will," but neither the commissioner nor the chancellor ruled on the admissibility of the evidence taken before the commissioner. From our view of the case it is unnecessary for us to rule on that question or to state the evidence objected to.

The testatrix was for many years a resident of Staunton, Virginia. She acquired substantial assets from both of her husbands, who predeceased her, and after death her estate was appraised at $723,310.26.

In the latter part of 1957 Mrs. Williams obtained from her business adviser a schedule of her investments for the purpose of preparing her

will. This list showed the number of shares of stock designated by her for various beneficiaries and the then market value of each share.

Thereafter, on April 9, 1958, testatrix executed her will, and a few days later she became partially paralyzed and was admitted to a hospital where she remained until her death on March 10, 1960.

In April, 1959, A. T. & T. notified its stockholders of the issuance of two additional shares of common stock to the holder of each outstanding share, the three shares having the same aggregate par value as the one original share.

It was stipulated by counsel that at the time the will was executed the market value of each share of A. T. & T. stock was approximately $174 per share, and at the time of the split it was reduced to approximately $83.

In February, 1960, testatrix received from Westinghouse one additional share of common stock for each share she owned as a result of a two-for-one split of its stock, the two shares having the same aggregate par value as the one original share.

At the time the will was executed the testatrix was the owner of 705 shares of A. T. & T. common stock and 700 shares of Westinghouse. Under Articles III, IV and V she bequeathed 380 shares of A. T. & T. and 485 shares of Westinghouse stock. As a result of the stock splits testatrix owned 2115 shares of A. T. & T. and 1400 shares of Westinghouse stock at the time of her death.

Appellants, legatees of a specified number of A. T. & T. and Westinghouse stock, argue that from a reading of the entire will of the testatrix, the language evinces her intention that they receive the additional shares required to give them the same proportionate interest in the corporations as she had when the will was executed.

On the other hand, the appellees say that the bequests to the appellants are general and not specific legacies, and since § 64-62 of the Code of 1950 provides that a will is to be construed to speak and take effect as if it had been executed immediately before the death of the testatrix, it constitutes a rule of construction for determining testatrix's intent, and the appellants are entitled to receive only the number of shares specified in the will and not the additional proportionate shares resulting from the stock splits.

The question presented is one of first impression in this Commonwealth, and the decisions of other courts are in conflict. Among the recent cases holding that a legatee of a specified number of shares of stock under a will takes the additional shares received by a testator as a result of a stock split after execution of his will and before his

death, are: *Shriners Hospitals for Crippled Children* v. *Emrie* (Mo.), 347 S. W. 2d 198 (1961); *Heinneman* v. *Colorado College* (Colo.), 374 P. 2d 695 (1962); *In re Helfman's Estate,* 193 Cal. App. 2d 652, 14 Cal. Rptr. 482 (1961); *In re Parker's Estate* (Fla. App.), 110 So. 2d 498 (1959), cert. denied, 114 So. 2d 3; *In re Rees' Estate,* 210 Or. 429, 311 P. 2d 438 (1957); *Clegg* v. *Lippold,* 68 Ohio L. Abs. 590, 123 N. E. 2d 549; *In re McFerren's Estate,* 365 Pa. 490, 76 A. 2d 759, 22 A. L. R. 2d 451; *Allen* v. *National Bank of Austin,* 19 Ill. App. 2d 149, 153 N. E. 2d 260; *In re Hicks' Will,* 272 App. Div. 594, 74 N. Y. S. 2d 246; *Chase Nat'l Bank* v. *Deichmiller,* 107 N. J. Eq. 379, 152 Atl. 697. See also cases collected in Anno., 7 A. L. R. 2d, § 5, pp. 281-285.

Recent cases holding that a legatee of a specified number of shares of stock under a will does not take the additional shares as a result of a stock split are: *Cuppett* v. *Neilly,* 143 W. Va. 845, 105 S. E. 2d 548 (1958); *Davis* v. *Price,* 189 Tenn. 555, 226 S. W. 2d 290; *In re Woodward's Estate,* 407 Pa. 638, 182 A. 2d 732 (1962); *McGuinness* v. *Bates* (Mass.), 189 N. E. 2d 212 (1963).

An analysis of the reported cases considering the question shows that the courts have used different approaches in arriving at testator's intent for the purpose of determining to whom the additional shares resulting from a stock split shall pass. Some took a formalistic view and relied on the general or specific nature of the bequest, with the general result that if the legacy was in the former category the additional shares did not pass with the legacy of a specified number of shares, and if in the latter the legatee was entitled to the additional shares. Others considered the general or specific classification of legacies immaterial and looked to the will for other indicia of the testator's intent.

■ A general legacy or devise is one which is not limited to any particular fund or thing, does not direct the delivery of any particular property, and may be satisfied out of the general assets of the testator's estate. Redfearn on Wills, 3d ed., § 146, p. 231; Page, Wills (Lifetime ed., 1941), Vol. 4, § 1394, p. 112.

A specific legacy is a gift by will of a specific thing, or some particular portion of a testator's estate, which is so described by the testator as to distinguish it from other articles of the same nature. *May* v. *Sherrard's Legatees,* 115 Va. 617, 620, 79 S. E. 1026, 1027, Ann. Cas. 1915 B, 1131; Redfearn on Wills, *supra;* Page, Wills, *supra.*

The rationale of the line of cases which rely on the specific or

general nature of the bequest to ascertain testatrix's intent is based upon § 24 of the English Will Act of 1837, 4 & 1 Vict. C. 26, which codified the common law rule that a will speaks as of the date of the death of the testator unless a contrary intention appears in the will. Under this statute, which is in the same language as our statute, Code § 64-62, the English cases have held that a bequest of a stated number of shares of stock, which was later split and resulted in the testator receiving additional shares after the execution of his will and before his death, was a general bequest, and the legatee was not entitled to the additional shares. *In re Gillins* (1909), 1 Ch. 345; *In re McAfee* (1909), 1 Ir. R. 124. The courts reasoned that a will refers to the estate of the testator as it existed at the time of his death. But under this statute the English courts have also held that where a bequest is *specific* it shows an intention contrary to the statutory rule, and a will is construed as referring to the interests represented by shares of stock held at the date of execution and the legatees take the additional shares in the new form. See *In re Clifford* (1912), 1 Ch. 29; *In re Leeming* (1912), 1 Ch. 828; *In re* Gibson (1866), L. R. 2 Eq. 669; *Guardian, Trust, and Ex'rs Co. of New Zealand* v. *Smith* (1923), N. Z. L. R. 1284.

Since the case of *Robinson* v. *Addison* (Ch. 1840), 2 Beav. 515, 48 Eng. Rep. 1281, a leading English case on the classification of legacies, held that a bequest of fractional shares of stock was general, there has been a tendency for courts to look with disfavor on specific legacies and to construe legacies as general rather than specific. This is particularly evident where ademption is an issue, apparently on the theory that the testator wanted the gift to be effective. 57 Am. Jur., Wills, § 1406, p. 940; 43 Iowa L. Rev. 467, 468, 469. *Cf., Skipwith, et al.* v. *Cabell's Ex'or*, 19 Gratt. (60 Va.) 758. Although the influence of the English decisions resulted in the early development of a general rule in this country that gifts of corporate stocks or bonds are *prima facie* general legacies unless a contrary intention appears from the language of the will making it clear that they are specific, many courts have broken away from the "arbitrary and ironclad English rule" that bequests of stocks are *prima facie* general and have held them to be specific where the will on its face, fairly construed, shows testator's intention to make them so. *Shriners Hospitals for Crippled Children* v. *Emrie, supra; In re Largue's Estate*, 267 Mo. 104, 183 S. W. 608, 610, and the cases there cited; Anno., 7 A. L. R. 2d, § 1, pp. 277, 278, and § 5, pp. 281-285.

The rule has been firmly established that additional shares of stock acquired by a testator as a result of a stock split, after the execution of a will and before the date of his death, pass proportionately under a *specific* bequest of the original shares, since such a bequest shows an intent to bequeath the interests owned in the corporations at the time of execution of the will. See *Shriners Hospitals for Crippled Children* v. *Emrie, supra*, 347 S. W. 2d at p. 201, and the numerous cases there cited.

While it is true that a will is to be construed to speak and take effect as of the time of death unless a contrary intention appears (Code § 64-62), in ascertaining testator's intention a court looks to the words used by him, considered in the light of the entire will and the circumstances surrounding the testator when the will was executed. *McCabe* v. *Cary's Ex'r*, 135 Va. 428, 434, 116 S. E. 485, 487; *Whitehurst* v. *White*, 160 Va. 859, 866, 169 S. E. 724, 726; *Baptist Home* v. *Mizell*, 197 Va. 399, 401, 89 S. E. 2d 332; 20 Mich. Jur., Wills, § 76, p. 243.

We are quite mindful that courts should not rewrite a testator's will to produce a result which they may think he intended, but should first ascertain testator's intent as expressed in the will and then carry it out. A rule of construction should not be applied to produce a result which, from the language of a testator's will, he manifestly did not intend.

It is apparent from reading the testatrix's entire will that before and at the time of its execution she had given considerable thought to determining the objects of her bounty and had a full knowledge of the value of the various assets which made up her large estate. The will represents an apportionment of her estate according to what she considered to be her affections, obligations, friendships, and duties to charities. It shows testatrix's general scheme and plan of distribution and reveals her purpose and intent.

Testatrix unquestionably was considering the stocks owned by her at the time her will was executed and she intended to give 380 shares of her 705 shares of A. T. & T. and 485 shares of her 700 shares of Westinghouse stock to the legatees named in Articles III, IV and V. She clearly intended to give the legatees named in these articles of her will her interest in the corporations which these shares represented on the date of the execution of the will. *Chase Nat'l Bank* v. *Deichmiller, supra*, 107 N. J. Eq. at p. 381, 152 Atl. at p. 698; *In re Parker's Estate, supra*, 110 So. 2d at pp. 503-504; *Allen* v.

*National Bank of Austin, supra,* 153 N. E. 2d at p. 265; *In re Mc-Ferren's Estate, supra,* 76 A. 2d at p. 763. Afterwards, by unilateral action on the part of the corporations, while testatrix was ill and shortly before her death, the stock splits were accomplished and the market value of each share of A. T. & T. stock was reduced to approximately $83. The interests originally represented by the 380 shares of A. T. & T. stock became 1140 shares, and the 485 shares of Westinghouse stock became 970 shares at the time of the death of the testatrix. The stock splits brought about a mere change in form of the testatrix's interest in the corporations and not a change in the substance of that interest. See *Skipwith, et al.* v. *Cabell's Ex'or, supra; Adams* v. *Conqueror Trust Co.,* 358 Mo. 763, 217 S. W. 2d 476, 481, 7 A. L. R. 2d 268; *In re Parker's Estate, supra,* 110 So. 2d at p. 503; *In re Helfman's Estate, supra,* 14 Cal. Rptr. at p. 484.

It is perfectly apparent that Mrs. Williams did not intend that the actions of the corporations should reduce the value of the interests of the individuals, associations and corporations who were to receive A. T. & T. and Westinghouse stock under Article III and give these assets represented by the additional shares to the residuary legatees. It is also perfectly apparent that she did not intend that the action of the corporations should reduce the values of the two trusts by taking assets away from them and giving the additional interest to the residuary legatees. Language in the trusts for the hospital and Boys' Home providing that the trustee's commissions be paid out of the residuary estate further indicates testatrix's intent that the trusts assets not be diminished, thereby making the stock bequests specific legacies.

Other evidence of testatrix's intent may be found from other provisions of Article III of her will wherein she made several bequests of sums of money to certain named individuals. The fact that in the same article she bequeathed shares of stock to appellants indicates an intention to give them more than a monetary interest. It shows that she intended to give them the interests she had in the corporations at the time the will was executed. The bequests of stocks were just as specific as the articles of personal property bequeathed to some of the appellants in the same article of the will.

To uphold the contention of the appellees that the additional shares issued as a result of the stock split should pass to the residuary legatees would thwart the plain intention of the testatrix and upset the scheme of distribution of her estate which is apparent from the four corners of her will.

Having concluded that the language of testatrix's will shows her intention to give to the legatees of A. T. & T. and Westinghouse stock the proportionate interest she had in the corporations at the time of the execution of her will, thereby making the legacies specific, we hold that this shows testatrix's intent to have her will speak as of the date of its execution, which made inapplicable the statutory rule of construction (§ 64-62) that a will ordinarily speaks as of the date of death. Thus the additional shares the testatrix received as a result of the stock splits pass to the appellants and others named in Articles III, IV and V of the will on the basis of the shares the testatrix specified at the time her will was executed, and they are entitled to receive three shares for each share of A. T. & T. stock bequeathed to them and two shares of Westinghouse stock for each share bequeathed to them.

For the reasons stated, the decree of the court below is reversed with directions to enter a decree in accordance with this opinion.

*Reversed and remanded.*