## CIRCUIT COURT OF THE CITY OF CLIFTON FORGE

First National Bank of Clifton Forge,
Executor and Trustee under the Will
of Harman W. Peaco, deceased

v.

Harman W. Peaco, Jr.,
Louise Peaco Smith,
Raymond P. Peaco, and
Lillian Peaco Jones

January 16, 1978

Case No. 1726

By JUDGE ROSCOE B. STEPHENSON, JR.

This is a suit brought by the Executor and Trustee to have the court construe the Will of Harman W. Peaco, deceased. The parties defendant are the testator's four children. Harman W. Peaco, Jr. (Harman Jr.) filed an answer in which he asserts his right to purchase the testator's stock in The First National Bank of Clifton Forge (the Bank). The other defendants failed to file answers.

In Clause Fifth of the Will the testator gave Harman Jr. the right and option to purchase his forty shares of stock in the Bank, after the death of the testator's wife, at a price of $30.00 per share. As a result of three stock splits and one stock dividend (all occurring between the testator's death and the death of his wife), the number of shares increased from forty to 900. Harman Jr. claims the right to purchase the 900 shares for the total sum of $1,200.00. The question presented is whether the additional shares which resulted from a stock split and from a stock dividend, or from either, are included in the option.

The testator left his bank stock to his wife for her lifetime, and by Clause Fifth of his will he said:

FIFTH: I am the owner of forty shares of stock in the First National Bank of Clifton Forge, at Clifton Forge, Virginia, which my son, Harman W. Peaco, Jr. wants to buy. I direct that after the death of my said wife, that my Executors hereinafter named, do sell all of the said stock to my son, Harman W. Peaco, Jr., at the price of $30.00 per share, should he desire to buy it, but, if my son should not want to buy it, then I direct that my said Executors hereinafter named do sell the said stock at the prevailing market price, and divide the proceeds from the sale of same amongst my living children, share and share alike. Should my son, Harman W. Peaco, Jr., buy the stock in said Bank, at $30.00 per share, then I direct that he shall not share in the proceeds from the sale of same, but the said proceeds shall be distributed share and share alike amongst my other remaining living children.

The testator died on January 26, 1953. He was survived by his widow, Nellie Myers Peaco (the life tenant), now deceased, and by four children, the defendants, namely Harman W. Peaco, Jr. (Harman Jr.), Louise Peaco Smith (Louise), Raymond P. Peaco (Raymond) and Lillian Peaco Jones (Lillian), all of whom are living. The life tenant died February 14, 1976.

The testator executed his Will on August 15, 1951, and at his death he owned forty shares of stock in the Bank. On August 24, 1958, the Bank's stock was split on the basis of one additional share for each two shares held (one for two). This increased the number of shares from forty to sixty shares. On January 27, 1964, another one for two split occurred increasing the number of shares to ninety. On February 11, 1969, there was a five for one split making the total at that time 450 shares. As a result of a 100 percent stock dividend effective March 15, 1974, the total amount became 900 shares.

For some years prior to his death, the testator was in failing health and rather serious financial straits, and Harman, Jr. was most helpful and attentive to his

needs. Through Harman Jr.'s financial assistance, his father was able to save his home from foreclosure. He purchased two artificial legs for his father, and shortly before his father's death he gave him $2,000.00.

At the time the testator died the forty shares had a value of approximately $50.00 per share. At the time of the death of the life tenant the 900 shares were valued at approximately $25.00 per share.

Both Raymond and Lillian testified that Harman, Jr. was very helpful and kind to their father at all times, and they thought he should be permitted to purchase all 900 shares of bank stock for $1,200.00.

Although Louise acknowledged that Harman Jr. was kind and helpful to her father, she testified that it would be unfair to permit him to purchase all 900 shares for $1,200.00. She conceded that he should be permitted to purchase the stock "at a fair price" which was defined as being less than market value and about $20.00 per share.

As previously stated, the total number of shares at this time (and for that matter at the death of the life tenant) is 900. One-half (450) are the product of a 100 percent stock dividend. The other 450 shares consist of the original 40 and 410 due to stock splits.

The law recognizes a distinction between a stock split and a stock dividend.

> The essential distinction between a stock dividend and a stock split is that in the former there is a capitalization of earnings or profits, together with a distribution of the added shares which evidence the assets transferred to capital, while in the latter there is a mere increase in the number of shares which evidence ownership without altering the amount of capital, surplus, or segregated earnings. In brief, a stock split is merely a dividing up of the outstanding shares of a corporation into a greater number of units, without disturbing the stockholder's original proportional participating interest in the corporation. A stock split is essentially one of form and not of substance. 19 Am. Jur. 2d, *Corporations*, Section 808, pp. 284-85.

## The Stock Splits

The increased number of shares caused by the stock splits did not change the proportional interest of ownership in the Bank. They merely created a greater number of units of ownership for the same proportional interest of ownership. They changed the form of ownership not the substance.

In *Warner* v. *Baylor*, 204 Va. 867, 134 S.E.2d 263 (1964), the court held that a particular bequest of shares of stock to a legatee included the splits thereof which occurred between the execution of the will and the testator's death. This view is shared by a number of other state courts, some of which are cited in *Warner*. *See also, Annotation, Change in Stock or Corporate Structure or Split or Substitution of Stock of Corporation, as Affecting Bequest of Stock*, 46 A.L.R.3d, § 5[a], pp. 24-34.

Since stock splits merely change the form and not the substance of the holding, and applying the rationale of *Warner* to the present case, the court holds that Harman, Jr. has the right and option to purchase 450 shares of the Bank's stock (i.e., the 40 original shares and the 410 shares resulting from stock splits at a total price of $1,200.00. If he elects not to purchase, the 450 shares shall be sold by the executor-trustee at fair market value and the proceeds shall be divided among the testator's four children.

## The Stock Dividend

In 1974 the Bank declared a 100 percent stock dividend amounting to 450 additional shares in the testator's account.

While some courts treat a stock split and a stock dividend alike, "as a general rule, shares of stock received by a testator as a stock dividend, subsequent to his making of a bequest of a specified number of shares of the same stock, do not pass to the legatee named in such bequest." 46 A.L.R.3d, § 8, p. 64.

The same treatise further states:

> While in many instances it would seem unrealistic to make a distinction in the treatment of shares received by a testator as a result of a splitup of bequested shares and

those received by him as stock dividend thereon, it is quite clear that not only have a substantial number of courts done so, but that in so doing they have generally viewed stock dividends as capitalizations of past earnings and as being so related to earnings and income that they are not essentially different in most respects from cash dividends which have historically been considered as entirely separate and apart from the shares of stock upon which they were declared. 46 A.L.R.3d, § 2, p. 14.

In *Re Rees' Estate*, 210 Or. 429, 311 P.2d 438 (1957), the court observed that a stock split remains a part of a specific legacy while a stock dividend ordinarily passes to the residuary legatee, because a stock split changes only the form of the bequest, whereas a stock dividend, being paid out of surplus, is similar to any other dividend which is distributed to a stockholder. *See also*, 46 A.L.R.3d, § 9[b], pp. 69-72.

Therefore, the court holds that the 450 shares derived from the 100 percent stock dividend is not part of the stock in which Harman Jr. has an option to purchase. Instead, these 450 shares became part of the residuary estate and shall be sold by the executor-trustee at market value with the proceeds therefrom divided equally among the testator's four children.